[No. B178488. Second Dist., Div. Two. Sept. 21, 2005.]

In re KENNETH S., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Appellant, v.
KENNETH S., Defendant and Respondent.

**COUNSEL**

Steve Cooley, District Attorney, Patrick D. Moran, Brent Riggs and Matthew G. Monforton, Deputy District Attorneys, for Plaintiff and Appellant.

Michael P. Judge, Public Defender, Albert J. Menaster, Eric Duvernay and Maureen Pacheco, Deputy Public Defenders, for Defendant and Respondent.

OPINION

**BOREN, P. J.**—A petition under Welfare and Institutions Code section 602[1] was initiated against respondent Kenneth S., a minor, alleging that he had committed second degree robbery (Pen. Code, § 211) and misdemeanor battery (Pen. Code, § 242). The juvenile court sustained the petition as to both counts, the principal evidence against respondent being a confession he gave to police. Before the disposition hearing, respondent moved for a new trial on the ground that the then recent United States Supreme Court decision in *Missouri v. Seibert* (2004) 542 U.S. 600 [159 L.Ed.2d 643, 124 S.Ct. 2601] (*Seibert*) established that he was in custody at the time he confessed, and, because he had not received the required *Miranda*[2] warnings, his confession was inadmissible. The juvenile court granted the motion and dismissed the petition with prejudice when the People were unable to proceed. The People appeal from the order granting the new trial motion and dismissing the petition, contending that *Miranda* warnings were not required because respondent was not in custody at the time he confessed. Respondent contends that we lack jurisdiction to consider this appeal.

We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 16, 2004, the district attorney filed a petition under section 602 to adjudicate respondent a ward of the court for allegedly having committed robbery and assault.[3] At the adjudication hearing, the juvenile court admitted appellant's confession, as well as evidence relating to how it was obtained. The evidence adduced at that hearing was as follows.

According to Erick Esteban, on July 2, 2004, at approximately 10:00 p.m., he was delivering pizza near 2020 Corning Street, in Beverly Hills. After making the delivery, three to four young males approached him. One of them had his hands inside his shirt as if holding a weapon. That same person hit Esteban in the face and demanded money. When asked at the hearing if he recognized anyone in the courtroom as the person who hit him, Esteban testified that he was uncertain. After being hit, Esteban began to fall. As he did, he pleaded, "Please don't hit me and don't do that." The other males surrounded him and began punching him. Esteban was uncertain which of the

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602] (*Miranda*).

[3] Although not contained in the clerk's transcript, it appears that the district attorney also filed a section 602 petition against respondent's brother, Trevon, pertaining to the same robbery, which was adjudicated with respondent's petition.

others hit him because he was covering his head. The men took his fanny pack, car key and money from his pocket.

On July 14, 2004, Los Angeles Police Detective Kirby Carranza telephoned respondent's foster mother, Yvonne Jenkins, and asked if she would voluntarily bring respondent and his brother, Trevon, to the police station for questioning. He told her he wanted to speak to them about "crimes that had occurred in the neighborhood."

On July 15, 2004, at approximately 7:00 a.m., Jenkins brought the boys to the station. The three were buzzed into the security area and taken upstairs to a location on the second floor, where civilians were not allowed to "just roam around." Detective Carranza accompanied each to separate rooms, respondent being placed in a room that was seven feet by seven feet, with the door partially open. Jenkins consented to the detective's speaking to respondent alone. Jenkins was brought to a room that was 10 feet from respondent.

In a recorded interview, Detective Carranza thanked respondent for voluntarily coming to the station and told him that he was not under arrest and was free to leave at any time he wanted. Detective Carranza did not give respondent *Miranda* warnings before the interview because respondent was not in custody, was not detained, came in voluntarily and was free to leave, even though he was brought to a nonpublic area of the station from which an officer would have had to escort him.

Detective Carranza began the interview by discussing with respondent his truancy for five or 10 minutes. He then questioned him about gang conversation and people in the neighborhood for another 10 to 15 minutes. After 25 minutes, he asked if respondent was involved in the July 2, 2004, pizza man robbery on Corning Street. Respondent initially denied involvement, stating that he did not know what the detective was talking about. He then acknowledged hearing about a robbery of a pizza man. Detective Carranza said he had information that respondent was involved in that crime, and respondent then stated he was there, but denied striking Esteban. Finally, respondent admitted approaching Esteban and demanding pizza. He told the detective that when he was told that the man had none, he demanded money. Esteban said he had none, and respondent shoved him against a gate and punched him in the face. Esteban took his fanny pack off and handed it to respondent. Respondent said he acted alone, although he had previously indicated that his brothers were present. Before respondent made these admissions, his counsel objected that they were hearsay. The juvenile court initially sustained the objection, adding that there was also a *Miranda* violation. Upon further consideration and research, it stated that it was not going to rule on the hearsay and *Miranda* issues at that time, and it heard the challenged evidence.

When respondent began discussing his involvement in the robbery, Detective Carranza did not give any *Miranda* warning, even though he acknowledged that respondent was not free to leave at that point. Only at the conclusion of the interview did he read respondent his *Miranda* rights and detain him. He asked no additional questions. At no time during the interview did respondent request to leave or ask to speak to Jenkins.

After interviewing respondent, Detective Carranza brought Trevon to the interview room. Trevon stated that he was at the robbery scene, heard respondent demand money from Esteban, and saw him push Esteban, punch him twice and grab his fanny pack. Trevon and respondent then ran from the scene.

At the conclusion of the People's evidence, respondent moved pursuant to section 701.1 to dismiss the allegations for insufficiency of the evidence because his confession was invalid, and no one was able to identify him as the perpetrator. The juvenile court denied the motion, finding that the interrogation of respondent was voluntary, and respondent understood that he was free to leave during the interview.[4]

After denial of his motion, respondent testified in his own defense. He admitted being at the scene of the robbery with his two brothers, Derek and Trevon. Derek had his hands in his shirt and demanded money from Esteban. Thinking Derek was about to leave, respondent walked toward Derek. Esteban jumped at Derek, and frightened, respondent hit Esteban. Derek took Esteban's pouch. Respondent never looked inside of it.

At the conclusion of the evidence, the juvenile court sustained the section 602 petition as to both counts.

At the disposition hearing, respondent filed what he termed a Penal Code section 1181 "Motion for New Trial," claiming that *Seibert* rendered his confession inadmissible. Agreeing, the juvenile court reversed its previous finding that respondent's confession was voluntary and ruled that he was in custody at the time he confessed. Because *Miranda* warnings were therefore required and not given, the confession was inadmissible. When the prosecutor indicated that she was unable to proceed, the juvenile court dismissed the petition with prejudice.

---

[4] Trevon also made a section 701.1 motion to dismiss for insufficiency of the evidence, which was granted.

The People appeal from the orders unlawfully suppressing the minor's confession and dismissing the case.

## DISCUSSION

## I

### *Appellate jurisdiction*

The People contend that there is appellate jurisdiction over this appeal under section 800, subdivision (b)(4) and (5). That subdivision provides: "(b) An appeal may be taken by the people from any of the following: [¶] . . . [¶] (4) An order or judgment dismissing or otherwise terminating the action before the minor has been placed in jeopardy, or where the minor has waived jeopardy. [¶] (5) The imposition of an unlawful order at a dispositional hearing, whether or not the court suspends the execution of the disposition."

Respondent contends that we lack jurisdiction because neither of the jurisdictional grounds asserted by the People is applicable. He argues that section 800, subdivision (b)(4) is inapplicable because jeopardy attached when the first witness was sworn, he was placed in jeopardy before the action was dismissed, and he did not waive jeopardy. He further argues that subdivision (b)(5) is inapplicable because this appeal is not from an unlawful dispositional order. While we agree that subdivision (b)(5) does not afford a basis for appellate jurisdiction here, we conclude that subdivision (b)(4) does.

■ Our jurisdiction cannot be premised on section 800, subdivision (b)(5). That subdivision implicitly suggests that it is applicable to orders pertaining to the disposition hearing, not merely to orders that might happen to be issued at the time of that hearing. While the juvenile court's ruling on the motion for new trial based on a *Miranda* violation occurred at the scheduled dispositional hearing, it occurred before that hearing took place (it never did take place), and had nothing to do with the disposition, rather pertaining to the already completed adjudication hearing. Therefore, the juvenile court's order was not "an unlawful order at a dispositional hearing," as contemplated by subdivision (b)(5).

■ Subdivision (b)(4) of section 800 authorizes an appeal from an order dismissing or terminating a juvenile action, as was the appeal here, before a minor has been placed in jeopardy, or where the minor has waived jeopardy. ■ Double jeopardy protections apply to the adjudication phase of juvenile delinquency proceedings. (*Breed v. Jones* (1975) 421 U.S. 519, 528–531 [44

L.Ed.2d 346, 95 S.Ct. 1779]; *Richard M. v. Superior Court* (1971) 4 Cal.3d 370, 375 [93 Cal.Rptr. 752, 482 P.2d 664].) Jeopardy attaches in delinquency proceedings when the first witness is sworn to testify regarding the offense in question. (*Richard M. v. Superior Court, supra,* at p. 376; *In re Steven S.* (1999) 76 Cal.App.4th 349, 352–353 [90 Cal.Rptr.2d 290]; *In re Mitchell G.* (1990) 226 Cal.App.3d 66, 68 [276 Cal.Rptr. 245].) Jeopardy attached here when the first witness was sworn in respondent's adjudication hearing.

Therefore, if appellate jurisdiction exists at all under section 800, subdivision (b)(4), it must be because appellant waived jeopardy. We begin our analysis by observing that what respondent denominated a "motion for a new trial" is a motion authorized in criminal proceedings. It would appear that such motions are unauthorized in juvenile delinquency proceedings, but are tantamount to motions under sections 775 or 778.[5] (See *In re Steven S.* (1979) 91 Cal.App.3d 604, 607 [154 Cal.Rptr. 196].) We have been referred to, and have found, no authority considering the impact of double jeopardy protections on motions under section 775. Consequently, we find it appropriate to consider the effects of double jeopardy on the analogous motions for new trial.

■ The grant of a new trial after conviction does not ordinarily bar retrial. (*People v. Serrato* (1973) 9 Cal.3d 753, 761 [109 Cal.Rptr. 65, 512 P.2d 289], disapproved on other grounds in *People v. Fosselman* (1983) 33 Cal.3d 572, 583, fn. 1 [189 Cal.Rptr. 855, 659 P.2d 1144].) The defendant is deemed to have waived jeopardy by attacking an erroneous judgment of conviction. (See *Green v. United States* (1957) 355 U.S. 184 [2 L.Ed.2d 199, 78 S.Ct. 221]; see also *People v. Garcia* (1966) 240 Cal.App.2d 9, 11–12 [49 Cal.Rptr. 146].) " '[B]y successfully attacking the judgment he at least subjects himself to a retrial that may reach the same result.' " (*People v. Lo Cigno* (1965) 237 Cal.App.2d 470, 472 [46 Cal.Rptr. 918].)

---

[5] Section 775 provides: "Any order made by the court in the case of any person subject to its jurisdiction may at any time be changed, modified, or set aside, as the judge deems meet and proper, subject to such procedural requirements as are imposed by this article."

Section 778 provides: "Any parent or other person having an interest in a child who is a ward of the juvenile court or the child himself through a properly appointed guardian may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a ward of the juvenile court for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court. The petition shall be verified and, if made by a person other than the child, shall state the petitioner's relationship to or interest in the child and shall set forth in concise language any change of circumstance or new evidence which are alleged to require such change of order or termination of jurisdiction."

■ Respondent attacked the juvenile court findings that he was not in custody, that his confession was admissible and that the allegations in the section 602 petition were true. By attacking those findings, respondent implicitly agreed that he could be readjudicated, if necessary, if his challenge prevailed, thereby waiving jeopardy. Moreover, reversal of the juvenile court's ruling on the motion for a new trial will simply reinstate its prior ruling and will not subject respondent to a second adjudication hearing. (*United States v. Wilson* (1975) 420 U.S. 332, 345 [43 L.Ed.2d 232, 95 S.Ct. 1013] ["defendant has no legitimate claim to benefit from an error of law when that error could be corrected without subjecting him to a second trial before a second trier of fact"].)

## II

### Miranda *warning*

Appellant contends that the juvenile court erroneously concluded that respondent was in custody when he confessed without having received *Miranda* warnings, rendering his confession inadmissible. It argues that a person would not reasonably believe that he or she was in custody where the person appeared voluntarily at the police station, was expressly told during the interview that he or she was not under arrest and could leave at any time, and was questioned for only 15 to 20 minutes. Consequently, the obligation to give the *Miranda* warnings never arose, and respondent's confession was admissible. This contention has merit.

■ After being taken into custody by police or otherwise deprived of his or her freedom of action in any significant manner, a person must be given *Miranda* warnings apprising the person of his or her right to remain silent, that any statement the person makes may be used against the person and that the person has the right to counsel, retained or appointed. (*Miranda, supra,* 384 U.S. at pp. 444–445.) Statements elicited in noncompliance with this rule may not be admitted for certain purposes in a criminal trial. (Compare *id.* at pp. 492, 494, with *Harris v. New York* (1971) 401 U.S. 222 [28 L.Ed.2d 1, 91 S.Ct. 643].) The salutary purpose of this rule is "to reduce the risk of a coerced confession and to implement the Self-Incrimination Clause." (*Chavez v. Martinez* (2003) 538 U.S. 760, 790 [155 L.Ed.2d 984, 123 S.Ct. 1994].)

■ But *Miranda* made clear that the rule was only applicable to custodial interrogation, which means, "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." (*Miranda, supra,* 384 U.S. at p. 444.) In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there was a " 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." (*California v. Beheler* (1983) 463 U.S. 1121, 1125 [77 L.Ed.2d 1275, 103 S.Ct. 3517] (per curiam), quoting *Oregon v. Mathiason* (1977) 429 U.S. 492, 495 [50 L.Ed.2d 714, 97 S.Ct. 711] (*Mathiason*).) The deprivation can be constructive as well as actual. "[C]ustody occurs if the suspect is physically deprived of his freedom of action in any significant way or is led to believe, as a reasonable person, that he is so deprived." (*People v. Arnold* (1967) 66 Cal.2d 438, 448 [58 Cal.Rptr. 115, 426 P.2d 515], disapproved on other grounds in *Walker v. Superior Court* (1988) 47 Cal.3d 112, 123 [253 Cal.Rptr. 1, 763 P.2d 852].)

■ The objective circumstances of the interrogation, not the subjective intention of the interrogating officer or the subjective understanding of the person being questioned, is evaluated in determining whether the person was in custody at the time of the questioning. "A policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time"; rather, "the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." (*Berkemer v. McCarty* (1984) 468 U.S. 420, 442 [82 L.Ed.2d 317, 104 S.Ct. 3138].) The United State Supreme Court has made clear, in no uncertain terms, that any inquiry into whether the interrogating officers have focused their suspicions upon the individual being questioned (assuming those suspicions remain undisclosed) is not relevant for purposes of *Miranda*. (*Stansbury v. California* (1994) 511 U.S. 318, 320 [128 L.Ed.2d 293, 114 S.Ct. 1526].) An officer's knowledge or beliefs may bear upon the custody issue only if they are conveyed, by word or deed, to the individual being questioned. (Cf. *Michigan v. Chesternut* (1988) 486 U.S. 567, 575, fn. 7 [100 L.Ed.2d 565, 108 S.Ct. 1975], citing *United States v. Mendenhall* (1980) 446 U.S. 544, 554, fn. 6 [64 L.Ed.2d 497, 100 S.Ct. 1870] (opn. of Stewart, J.).) But "[e]ven a clear statement from an officer that the person under interrogation is a prime suspect is not, in itself, dispositive of the custody issue. . . ." (*Stansbury v. California, supra,* at p. 325.)

Because the facts are uncontroverted here, we independently review the *Miranda* ruling. (*People v. Boyer* (1989) 48 Cal.3d 247, 263 [256 Cal.Rptr. 96, 768 P.2d 610], disapproved on other grounds in *People v. Stansbury* (1995) 9 Cal.4th 824, 830, fn. 1 [38 Cal.Rptr.2d 394, 889 P.2d 588]; *People v.*

*Esqueda* (1993) 17 Cal.App.4th 1450, 1465 [22 Cal.Rptr.2d 126].) Respondent was subjected to neither actual nor constructive restriction on his freedom. He was brought to the police station by his foster mother voluntarily. At the beginning of his interview, Detective Carranza thanked him for voluntarily appearing and told him that he was not under arrest and was free to leave at any time he wanted. At no time until after the interview did he tell respondent that he was under arrest. The fact that Detective Carranza told respondent that he had information that respondent was involved in the robbery was insufficient by itself to constitute custody and to countervail these other factors. (See *Stansbury v. California, supra,* 511 U.S. at p. 325.)

 There was little evidence of constructive restriction on respondent's freedom. "Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.' It was *that* sort of coercive environment to which *Miranda* by its terms was made applicable, and to which it is limited." (*Mathiason, supra,* 429 U.S. at p. 495.)

 Although respondent was brought into a room by himself, this was only with his foster mother's permission for him to talk to Detective Carranza alone. The room to which respondent was brought was only 10 feet from his foster mother, and the door to the room was kept partially open during the interview. Respondent spoke only with Detective Carranza, as there were no other officers in the interrogation room. While the interview was conducted in a section of the police station to which the public was not given free access, and respondent would have required the accompaniment of an officer to leave, this was insufficient to have led a reasonable person in respondent's position to understand that he was in custody.

The juvenile court relied upon *Seibert* in concluding that respondent was in custody at the time he confessed. That case is inapposite. There, a police protocol for custodial interrogation called for giving no *Miranda* warnings until interrogation had yielded a confession even though that confession would be inadmissible under *Miranda*. The officer then gave the *Miranda*

warnings and led the suspect to provide the same confession a second time. In that limited context, the United States Supreme Court held a confession repeated after a warning inadmissible. (*Seibert, supra,* 542 U.S. at p. 604 [124 S.Ct. at p. 2605].)

Unlike in *Seibert,* here there was no evidence of any protocol used in eliciting respondent's confession. Moreover, in *Seibert,* when the suspect was interrogated, she was already under arrest and in custody. The *Seibert* court was not required to decide the issue before us, whether the suspect was in custody. That case therefore provides no guidance on that point.

*Mathiason, supra,* 429 U.S. 492, cited by appellant is instructive. In that case, the police were informed by a burglary victim that the defendant was the only person she could think of as a possible suspect. More than three weeks after the burglary, the officer left his card at the defendant's residence with a note asking him to call because the officer would "like to discuss something with you." The defendant called the next afternoon and agreed to come an hour and one-half later to the police station to talk. At the station, the officer met the defendant, shook hands with him and took him into an office with the door closed. He told the defendant he was not under arrest, that he wanted to talk with the defendant about a burglary and that if he was truthful the district attorney or judge might favorably consider that fact. He also told the defendant that the police believed he was involved in the burglary and then lied to the defendant, telling him that his fingerprints were found at the scene, which they were not. After sitting a few minutes, the defendant admitted taking the property. The officer then advised the defendant of his *Miranda* rights and took a taped confession. After the taped confession, the officer told the defendant he was not arresting him at that time, but was referring the case to the district attorney to determine whether to file criminal charges. Despite the facts that the interrogation occurred at a police station and the defendant was told he was a suspect in the crime, the United States Supreme Court found "no indication that the questioning took place in a context where the respondent's freedom to depart was restricted in any way. He came voluntarily to the police station, where he was immediately informed that he was not under arrest." (*Id.* at p. 495.)

Here, as in *Mathiason,* there was "no indication that the questioning took place in a context where the respondent's freedom to depart was restricted in any way." (*Mathiason, supra,* 429 U.S. at p. 495.) Respondent came to the police station voluntarily and was immediately informed that he was not under arrest and was free to leave. As in *Mathiason,* he was informed that the police had information that he had committed a crime.

## DISPOSITION

The order granting respondent's motion for new trial and dismissing the action is reversed, the trial court's original findings at the adjudication hearing are reinstated and the matter is remanded for a dispositional hearing.

Ashmann-Gerst, J., and Suzukawa, J.,* concurred.

Respondent's petition for review by the Supreme Court was denied January 18, 2006, S138489. Chin, J., did not participate therein.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.