Filed 8/3/21  P. v. Gudino CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> JESUS GUDINO GUDINO, <br><br> Defendant and Appellant. | F080729 <br><br> (Stanislaus Super. Ct. No. CR-19-001465) <br><br><br> **OPINION** |

-ooOoo-

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Stanislaus County.  Linda A. McFadden, Judge.

Gordon S. Brownell, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Levy, Acting P.J., Poochigian, J. and Detjen, J.

## INTRODUCTION

Appellant and defendant Jesus Gudino Gudino entered into a negotiated disposition based on the sexual molestation of his granddaughter. Thereafter, he moved to withdraw his plea and the motion was denied, and he was sentenced to 12 years in prison.

On appeal, his appellate counsel has filed a brief that summarizes the facts with citations to the record, raises no issues, and asks this court to independently review the record. (*People v. Wende* (1979) 25 Cal.3d 436.) We affirm.

## FACTS[1]

On or about October 25, 2018, defendant held his four-year-old granddaughter down on the couch against her will and licked her vagina. At a subsequent interview, defendant admitted he touched his granddaughter's vagina with his mouth and tongue.

## PROCEDURAL BACKGROUND

On February 22, 2019, a complaint was filed in Stanislaus County Superior Court charging defendant with count 1, oral copulation or sexual penetration of a child 10 years of age or younger, which carried a term of 15 years to life (Pen. Code, § 288.7, subd. (b));[2] and count 2, commission of a lewd act on a child (§ 288, subd. (a)).

On May 7, 2019, defendant, who was present with his attorney and an interpreter, entered into a negotiated disposition and pleaded no contest to a violation of section 287, subdivision (c)(2)(B), oral copulation on a person under the age of 14 years accomplished by force, violence, duress, or menace, as a lesser related offense to count 1, for an upper term of 12 years and dismissal of count 2. The court advised and obtained waivers of his constitutional rights. The court advised defendant it would also issue a stay-away order from the victim. Defendant said he understood.

---

[1] The parties stipulated to the factual basis at defendant's plea hearing.

[2] All further statutory citations are to the Penal Code unless otherwise indicated.

**Motion to withdraw plea**

On September 6, 2019, defendant appeared with a newly retained attorney, who advised the court that he would be filing a motion to withdraw the plea.

On October 2, 2019, defendant filed a motion to withdraw or set aside his plea because he was 70 years old and "may have" lacked mental capacity to understand the plea agreement, since people of similar ages are exempt from jury duty in the majority of states. Defendant also claimed he entered the plea without his prior attorney moving to suppress his pretrial statement and against his own free judgment, because he incorrectly thought the plea would prevent Child Protective Services from removing the victim from his daughter's custody, and he did not understand the legal system because of cultural and language barriers.

Defendant submitted a supporting declaration that he did not know the investigating officer was a certified translator, he was fearful of police because they were corrupt in Mexico, he was interviewed behind locked doors, and he was never advised of the warnings pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436.

On November 8, 2019, the prosecution filed opposition and summarized the case based on investigative reports and defendant's pre-plea interview. Defendant's daughter reported that the victim said defendant touched her private parts. Defendant was interviewed in Spanish by Detective Navarro, and admitted he performed acts of oral copulation on the victim.[3] Defendant was assisted by an interpreter at all court proceedings, including the plea hearing, and understood the terms of his plea.

---

[3] The instant record does not contain the transcript or video of defendant's pre-plea interview. According to the prosecution's opposition, defendant told Detective Navarro that he knew the case being investigated was regarding his granddaughter. Navarro explained that defendant was not under arrest and that he was free to leave anytime during the interview. Defendant stated that he understood, and he still wanted to speak with Navarro. Defendant said that on October 25, 2018, his granddaughter was staying at his residence and was on the couch playing when he walked into the room. Defendant stated that he noticed her underwear was partially down, so he removed them

**Evidentiary hearing**

On November 25, 2019, the court held an evidentiary hearing on defendant's motion.

Detective Navarro testified that in January 2019, he called defendant to arrange for an interview based on the report from the victim and her mother. Defendant agreed and Navarro asked where he wanted to meet. Defendant said he would meet him at the police department, but he failed to show up at the scheduled time. In February 2019, Navarro again talked to defendant and asked if he was still willing to meet him at the police department, and defendant agreed. Navarro did not tell defendant to come by himself or that he couldn't bring anyone with him. Defendant arrived as scheduled, and Navarro met defendant in the lobby and asked him if he was carrying any weapons. Defendant said no, and Navarro did not search him.

Detective Navarro escorted defendant to an upstairs interview room that was used to talk with victims and witnesses, and not suspects. They walked through three doors, none of which Navarro had to unlock or that automatically locked after they went through them. Navarro was not wearing a uniform, he was not carrying a gun or any weapon, and defendant was not in handcuffs.

The interview was videotaped and played for the court. The prosecutor stated the interview lasted 20 minutes.

Detective Navarro testified he was not a certified Spanish interpreter, but he was fluent and conducted the interview in Spanish. Defendant never acted like he did not understand him and never said he did not want to answer questions. Navarro testified he told defendant he was free to leave, and defendant understood him.

---

a little further to have access to her vagina. Defendant said he placed both hands on her hips and licked her vagina for "less than 50 seconds." Defendant said he looked up and saw her staring back at him, so he stopped and left the room.

4.

Detective Navarro testified he did not advise defendant of the *Miranda* warnings because he was not in custody and he was free to leave throughout the interview. At the end of the interview, Navarro arrested defendant because he confessed to the charge.

Mr. Bito, defendant's public defender, also testified at the evidentiary hearing, and explained he watched the video of defendant's interview and did not move to suppress defendant's statement because defendant voluntarily went to the police department and he was specifically told that he was free to leave at any time. Mr. Bito did not see a "colorable or strong argument to keep his statements out because of the lack of issues regarding whether or not he [was] detained."

Defendant testified he was afraid when he went to the police station. Detective Navarro said he was free to leave, but he did not feel safe and was afraid he would be charged with escaping. Defendant admitted Navarro never used force against him, but he was afraid because Navarro stared at him, touched him on the shoulder, and sat next to him. Defendant admitted Navarro spoke in Spanish and defendant understood everything he said. Defendant could not recall signing the declaration filed in support of his motion to withdraw his plea.

Dr. Jesse De La Cruz, an instructor at CSU Stanislaus on cultural diversity, testified he interviewed defendant prior to the hearing, and defendant was an older man who was familiar with corruption in the Mexican legal system. Dr. De La Cruz had watched the video of defendant's interview with law enforcement and believed defendant did not trust the police or understand he had the right to consult with an attorney because of his prior life experiences.

### *The court's ruling*

The court denied defendant's motion to withdraw his plea. The court found Mr. Bito's prior representation of defendant was not in any way deficient, particularly in his decision not to file a motion to suppress defendant's pre-plea statements. The court stated it reviewed the video of the interview and found defendant was at ease with

Detective Navarro, used a lot of hand gestures, appeared to explain a lot of details, and did not appear afraid of Navarro. The court noted that when Navarro sat next to defendant and placed his hand on him, it was more of a "befriending type of gesture to make [defendant] feel at ease," it "certainly could not have been such that [defendant] would have been afraid by those gestures," and defendant did not react in such a manner.

The court noted defendant failed to appear for the first scheduled interview, and he voluntarily went to the police department for the second appointment. He would have known that he did not have to go since he did not appear the first time, he was not forced to give any statements, and he voluntarily confessed.

The court found the negotiated plea gave defendant the opportunity to receive parole compared to the original charges that would have resulted in a life term. The court had conducted the plea hearing and found defendant fully understood his rights and the plea.[4]

---

[4] "*Miranda* warnings are not required 'simply because the questioning takes place in the station house, *or because the questioned person is one whom the police suspect*.' [Citations.]" (*People v. Moore* (2011) 51 Cal.4th 386, 402, italics added in original.) To determine whether an interrogation is custodial we consider a number of circumstances, including "whether contact with law enforcement was initiated by the police or the person interrogated, and if by the police, whether the person voluntarily agreed to an interview; whether the express purpose of the interview was to question the person as a witness or a suspect; where the interview took place; whether police informed the person that he or she was under arrest or in custody; whether they informed the person that he or she was free to terminate the interview and leave at any time and/or whether the person's conduct indicated an awareness of such freedom; whether there were restrictions on the person's freedom of movement during the interview; how long the interrogation lasted; how many police officers participated; whether they dominated and controlled the course of the interrogation; whether they manifested a belief that the person was culpable and they had evidence to prove it; whether the police were aggressive, confrontational, and/or accusatory; whether the police used interrogation techniques to pressure the suspect; and whether the person was arrested at the end of the interrogation. [Citations.]" (*People v. Aguilera* (1996) 51 Cal.App.4th 1151, 1162.)

Based on the testimony and the trial court's findings, defendant was not in custody when he confessed to the charged offenses and *Miranda* warnings were not required. Defendant voluntarily agreed to the first interview, suggested he would meet Navarro at

## Sentencing

Also, on November 25, 2019, the court held the sentencing hearing. The court denied probation and imposed the upper term of 12 years, consistent with the negotiated disposition, and served defendant with an order to stay away from the victim and the victim's family for 10 years.

The court also imposed a restitution fine of $300 (§ 1202.4, subd. (b)) and suspended the probation revocation fine in the same amount (§ 1202.45); a court operations assessment of $40 (§ 1465.8); and a criminal conviction assessment of $30 (Gov. Code, § 70373).

---

the police department, and knew he did not have to go since he did not appear. Defendant voluntarily showed up for the rescheduled interview one month later. Detective Navarro met him in the lobby; he did not search him and only asked if he was carrying any weapons. Navarro was the only officer who questioned him, he was not in uniform, and he was not carrying his sidearm or any weapon. Defendant admitted that Navarro spoke in Spanish, and he understood him. Defendant was advised that he was free to leave; he was not restrained or locked in the interview room.

The trial court reviewed the video and stated that defendant appeared at ease with Detective Navarro, he did not appear afraid of him, and Navarro did not engage in any inappropriate or coercive conduct. (See also *Stansbury v. California* (1994) 511 U.S. 318, 326 ["whether the interrogating officers have focused their suspicions upon the individual being questioned (assuming those suspicions remain undisclosed) is not relevant for purposes of *Miranda*"]; *Green v. Superior Court* (1985) 40 Cal.3d 126, 131–135 [a defendant who voluntarily interviewed with officers at the police station, was advised he was free to leave if he wanted to and submitted to a detailed nonaccusatory interview over a two-hour period was not in custody during a station house interview]; *In re Kenneth S.* (2005) 133 Cal.App.4th 54, 63–65 [juvenile who was voluntarily brought to station house by foster mother and interviewed in an area restricted from public access was not in custody where officer advised him he was free to leave at any time]; *People v. Moore, supra,* 51 Cal.4th at p. 402 [the defendant's voluntary interview, during which two officers questioned him in an unlocked room at station house for one hour and 45 minutes, asking "accusatory and skeptical questions," was found to be noncustodial where interview "as a whole, [was not] particularly intense or confrontational"]; *People v. Spears* (1991) 228 Cal.App.3d 1, 25–26 [the defendant was not in custody during 75-minute interview at police station when "courteous and polite" officers asked detailed, but not accusatory, questions].)

On January 23, 2020, defendant submitted a notice of appeal to the trial court and requested a certificate of probable cause based on ineffective assistance and an illegally induced plea. On January 29, 2020, the trial court issued a certificate of probable cause, and the superior court filed the notice of appeal.

## **DISCUSSION**

As noted above, defendant's counsel has filed a *Wende* brief with this court. The brief also includes the declaration of appellate counsel indicating that defendant was advised he could file his own brief with this court. By letter on June 12, 2020, we invited defendant to submit additional briefing. To date, he has not done so.

After independent review of the record, we find that no reasonably arguable factual or legal issues exist.

## **DISPOSITION**

The judgment is affirmed.