[No. S004697. Crim. No. 24685. Mar. 9, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT EDWARD STANSBURY, Defendant and Appellant.

**COUNSEL**

Pillsbury, Madison & Sutro, Robert M. Westberg, David S. Winton and Joseph A. Hearst for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald E. Niver and Aileen Bunney, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

THE COURT.—In *People* v. *Stansbury* (1993) 4 Cal.4th 1017 [17 Cal.Rptr.2d 174, 846 P.2d 756], we affirmed the judgment of death entered against defendant Stansbury for the kidnapping, rape, and murder of a 10-year-old child. The United States Supreme Court granted certiorari limited to defendant's claim of error under *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974] (hereafter *Miranda*), and reversed. (*Stansbury* v. *California* (1994) 511 U.S. __ [128 L.Ed.2d 293, 114 S.Ct. 1526].)

The high court observed that language in our opinion referring to the subjective beliefs of the police officers who contacted and interviewed defendant could be interpreted as inconsistent with earlier case law. The court pointed to authority holding that in analyzing the question whether a defendant is in custody for the purpose of determining if admonitions required by *Miranda*, *supra*, 384 U.S. 436, should be given, the subjective impressions of police officers regarding the defendant's custody status or

status as a suspect are irrelevant unless they were communicated to the defendant. (*Stansbury* v. *California, supra,* 511 U.S. at p. __ [128 L.Ed.2d at pp. 298-300, 114 S.Ct. at pp. 1529-1530].) The high court directed us to reconsider the question whether defendant was in custody when he made the statements to the police that he challenged on appeal. (*Id.* at p. __ [128 L.Ed.2d at p. 301, 114 S.Ct. at p. 1531].) Having reconsidered the question, we conclude that defendant was not in custody when he made the statements.

The high court stated the relevant facts in this case as follows:

"Ten-year old Robyn Jackson disappeared from a playground in Baldwin Park, California, at around 6:30 p.m. on September 28, 1982. Early the next morning, about 10 miles away in Pasadena, Andrew Zimmerman observed a large man emerge from a turquoise American sedan and throw something into a nearby flood control channel. Zimmerman called the police, who arrived at the scene and discovered the girl's body in the channel. There was evidence that she had been raped, and the cause of death was determined to be asphyxia complicated by blunt force trauma to the head.

"Lieutenant Thomas Johnston, a detective with the Los Angeles County Sheriff's Department, investigated the homicide. From witnesses inter-viewed on the day the body was discovered, he learned that Robyn had talked to two ice cream truck drivers, one being [defendant] Robert Edward Stansbury, in the hours before her disappearance. Given these contacts, Johnston thought Stansbury and the other driver might have some connec-tion with the homicide or knowledge thereof, but for reasons unimportant here Johnston considered only the other driver to be a leading suspect. After the suspect driver was brought in for interrogation, Johnston asked Officer Lee of the Baldwin Park Police Department to contact Stansbury to see if he would come in for questioning as a potential witness.

"Lee and three other plainclothes officers arrived at Stansbury's trailer home at about 11:00 that evening. The officers surrounded the door and Lee knocked. When Stansbury answered, Lee told him the officers were inves-tigating a homicide to which Stansbury was a possible witness and asked if he would accompany them to the police station to answer some questions. Stansbury agreed to the interview and accepted a ride to the station in the front seat of Lee's . . . car.

"At the station, Lieutenant Johnston, in the presence of another officer, questioned Stansbury about his whereabouts and activities during the after-noon and evening of September 28. Neither Johnston nor the other officer

issued *Miranda* warnings. Stansbury told the officers (among other things) that on the evening of the 28th he spoke with the victim at about 6:00, returned to his trailer home after work at 9:00, and left the trailer at about midnight in his housemate's turquoise, American-made car. This last detail aroused Johnston's suspicions, as the turquoise car matched the description of the one Andrew Zimmerman had observed in Pasadena. When Stansbury, in response to a further question, admitted to prior convictions for rape, kidnapping and child molestation, Johnston terminated the interview and another officer advised Stansbury of his *Miranda* rights. Stansbury declined to make further statements, requested an attorney, and was arrested. Respondent State of California charged Stansbury with first-degree murder and other crimes.

"Stansbury filed a pretrial motion to suppress all statements made at the station, and the evidence discovered as a result of those statements. The trial court denied the motion in relevant part, ruling that Stansbury was not 'in custody'—and thus not entitled to *Miranda* warnings—until he mentioned that he had taken his housemate's turquoise car for a midnight drive. Before that stage of the interview, the trial court reasoned, 'the focus in [Lieutenant Johnston's] mind certainly was on the other ice cream [truck] driver'; only 'after Mr. Stansbury made the comment . . . describing the . . . turquoise-colored automobile' did Johnston's suspicions 'shif[t] to Mr. Stansbury.' Based upon its conclusion that Stansbury was not in custody until Johnston's suspicions had focused on him, the trial court permitted the prosecution to introduce in its case-in-chief the statements Stansbury made before that time." (*Stansbury* v. *California, supra,* 511 U.S. at p. __ [129 L.Ed.2d at pp. 296-297, 114 S. Ct. at pp. 1527-1528].)

Our previous opinion rejected defendant's claim that his statements to Johnston were taken in violation of *Miranda, supra,* 384 U.S. 436. The opinion concluded that defendant was not in custody when he made the statements he sought to suppress, citing various facts in support that were not questioned by the high court. We observed that the police arrived at defendant's home and asked *if* he would accompany them to the police station. Defendant was "invited, not commanded, to come to the police station for an interview." (*People* v. *Stansbury, supra,* 4 Cal.4th at p. 1052.) We noted that defendant was offered the choice of driving himself or accepting a ride from the police, and pointed out that when he accepted a ride from the police, he sat in the front seat of the car. (*Id.* at pp. 1051-1052.) The opinion acknowledged that when defendant arrived at the police station, he was interviewed in the jail area of the station, but concluded that the interview was brief and the questioning not accusatory. (*Id.* at p. 1053.)

Our opinion also referred to the testimony of the police officers involved that they did not consider defendant a suspect. Unfortunately, it failed to delineate carefully the relevance of such testimony. ■ As the high court has said, "[a]n officer's knowledge or beliefs may bear upon the custody issue if they are conveyed, by word or deed, to the individual being questioned." (*Stansbury* v. *California, supra,* 511 U.S. at p. __ [128 L.Ed.2d at p. 300, 114 S.Ct. at p. 1530].) Thus, evidence of the officer's subjective suspicions or beliefs is relevant only "if the officer's views or beliefs were somehow manifested to the individual under interrogation and would have affected how a reasonable person in that position would perceive his or her freedom to leave" or if such evidence is "relevant in testing the credibility of [the officer's] account of what happened during an interrogation . . . . " (*Ibid.*)[1]

■ We review the record again to determine whether a reasonable person in defendant's position would have felt he or she was in custody. Disregarding the uncommunicated subjective impressions of the police regarding defendant's custodial status as irrelevant, we consider the record to determine whether defendant was in custody, that is, whether examining all the circumstances regarding the interrogation, there was a " 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." (*California* v. *Beheler* (1983) 463 U.S. 1121, 1125 [77 L.Ed.2d 1275, 1279, 103 S.Ct. 3517].) As the United States Supreme Court has instructed, "the only relevant inquiry is how a reasonable man in the suspect's shoes would have understood his situation." (*Berkemer* v. *McCarty* (1984) 468 U.S. 420, 442 [82 L.Ed.2d 317, 336, 104 S.Ct. 3138], fn. omitted.)

The parties dispute the applicable standard of review. (Compare *People* v. *Clair* (1992) 2 Cal.4th 629, 678 [7 Cal.Rptr.2d 564, 828 P.2d 705] [question of custody primarily one of fact, subject to review for substantial evidence], and *People* v. *Mickey* (1991) 54 Cal.3d 612, 649 [286 Cal.Rptr. 801, 818 P.2d 84] [same, relying on *United States* v. *Poole* (9th Cir. 1986) 806 F.2d 853] with *United States* v. *Humphrey* (7th Cir. 1994) 34 F.3d 551, 554, and fn. 1 [ultimate question of whether there was a custodial interrogation is subject to independent review]; *United States* v. *Jones* (7th Cir. 1994) 21 F.3d 165, 169, fn. 5 [noting discord among circuits and among panels of Seventh Circuit on question whether independent or "clear error" review

---

[1]To the extent language in our earlier opinions may be read to suggest that an officer's subjective focus of suspicion is an independently relevant factor in establishing custody for the purposes of *Miranda, supra,* 384 U.S. 436, such language is disapproved. (See *People* v. *Morris* (1991) 53 Cal.3d 152, 197 [279 Cal.Rptr. 720, 807 P.2d 949]; *People* v. *Holloway* (1990) 50 Cal.3d 1098, 1115 [269 Cal.Rptr. 530, 790 P.2d 1327]; *People* v. *Boyer* (1989) 48 Cal.3d 247, 272 [256 Cal.Rptr. 96, 768 P.2d 610].)

applies]; and *United States* v. *Henley* (9th Cir. 1992) 984 F.2d 1040, 1041 [noting confusion on standard of review in the United States Court of Appeal for the Ninth Circuit]; see also *Thompson* v. *Keohane* (9th Cir. 1994) 34 F.3d 1073, cert. granted Jan. 23, 1995, __ U.S. __ [130 L.Ed.2d 879, 115 S.Ct. 933] [presenting issue of standard of review].) We need not resolve the dispute because, even applying the higher independent review standard, we conclude that defendant was not in custody.

■ We reject defendant's claim that we must find custody if any fact or inference would support such a conclusion. Such a standard is inapplicable, even in the trial court. (See *People* v. *Markham* (1989) 49 Cal.3d 63, 67, fn. 3 [260 Cal.Rptr. 273, 775 P.2d 1042].) Defendant concedes the facts themselves are undisputed, but argues we must either draw inferences from the facts in his favor, or remand for a fuller hearing. He is mistaken. Rather, applying the independent review standard, a reviewing court should " ' " 'examine the uncontradicted facts to determine independently whether the trial court's [legal] conclusion . . . was properly found . . . . In exercising this function the court recognizes that the burden is on the prosecution . . . .' [Citation.]" ' [Citation.] If there is 'conflicting testimony, the court must "accept that version of events which is most favorable to the People, to the extent that it is supported by the record." [Citation.]' " (*People* v. *Howard* (1988) 44 Cal.3d 375, 394 [243 Cal.Rptr. 842, 749 P.2d 279]; see also *People* v. *Thompson* (1990) 50 Cal.3d 134, 166 [266 Cal.Rptr. 309, 785 P.2d 857].) We accept factual inferences in favor of the judgment or order below, even when we must independently review the legal conclusion the trial court has drawn. (See *People* v. *Boyer*, *supra*, 48 Cal.3d at p. 263 [applying independent review but accepting factual inferences in support of prevailing party]; *People* v. *Leyba* (1981) 29 Cal.3d 591, 596-597 [174 Cal.Rptr. 867, 629 P.2d 961] [trial court findings, whether express or implied, upheld if supported by substantial evidence, though reviewing court independently reviews facts, as found by the trial court, against the proper legal standard].)[2]

■ As for the merits, the record indicates that a reasonable person in defendant's shoes would not consider that he or she was in custody. A reasonable person who is asked if he or she would come to the police station to answer questions, and who is offered the choice of finding his or her own transportation or accepting a ride from the police, would not feel that he or

---

[2]Contrary to his claim, defendant was not the prevailing party below. Although the trial court found defendant was in custody at the point he mentioned borrowing a turquoise car and suppressed statements made after that point, defendant did not prevail on his motion to suppress with respect to the great majority of his statements to the police, and it was to this portion of the order that defendant directed his arguments on appeal.

she had been taken into custody. A police invitation to sit in the front of the car (which was not a marked police car) could only add to the objective impression that no custody had been imposed. Further, it is relevant that when Officer Lee spoke to defendant at defendant's home, Lee asked defendant whether he would come to the police station to answer questions *as a possible witness*. Similarly, when Officer Johnston spoke to defendant in the interview room, the officer told defendant he desired to question him *as a possible witness*. It unlikely that a reasonable person who is told twice he or she is to be questioned as a witness would believe that he was in custody during such questioning. Finally, the nature of the interview in this case, which was brief and not accusatory, would not convey to the reasonable person the impression that he or she was in custody, despite the fact that the interview took place in an interview room in the jail area of the police station.

With regard to the testimony of the police that they did not view defendant as a suspect and did not intend to place him in custody, their impressions undoubtedly were conveyed in some part to defendant, and would have affected a reasonable person's belief regarding his or her freedom to leave. The police conveyed their subjective impressions that defendant was not a suspect and was not in custody when they asked defendant if he would come to the police station, rather than demanding his presence, and when they told defendant both at his home and again in the interview room that they desired to question him as a possible witness. The attitude of the police was also conveyed to defendant through the questions asked at the interview. These questions were nonaccusatory, and defendant was largely permitted to re-count his observations and actions through narrative. Finally, the evidence adduced at the hearing below that the police actually suspected another man was relevant to corroborate the reports of police witnesses regarding their treatment of defendant in the above respects.

As before, defendant contends that certain circumstances would have indicated to a reasonable person in his position that he or she was in custody. He observes that the police arrived at his doorstep at 11 o'clock at night with guns drawn, and he argues that a reasonable person would infer from this that his or her cooperation was demanded. However, there is no evidence that defendant could see the guns, which were out of their holsters but not pointed at anyone. Indeed, all the evidence on the point is to the contrary. The officer who actually came to defendant's doorstep testified that he held the gun so that defendant could not see it. The other officers were 10 feet behind this officer. They also testified that they were not pointing their guns at defendant, and the evidence was that there was no artificial light to dispel

the darkness. The officers, two men and two women, were in street clothes, not in uniform. Thus, there is little or no evidence to support the inference that the reasonable person would feel that through a show of force the police conveyed the impression that there was no choice but to go to the police station.

 Defendant also renews his objection that the interview itself took place in a custodial setting because it occurred in the jail area of the police station. Station house interviews are not necessarily custodial, however, as the high court has explained. In *Oregon* v. *Mathiason* (1977) 429 U.S. 492 [50 L.Ed.2d 714, 97 S.Ct. 711], for example, the high court found that the defendant was not in custody, though he was questioned in the allegedly coercive environment of the police station. In that case, the defendant acceded to a police officer's request to be interviewed at the police station. The officer told the defendant he was not under arrest, but the interview was accusatory to the extent that the officer told the defendant he was a suspect in a burglary, and falsely told him that his fingerprints had been found on the scene. The court nevertheless found that custody had not been established. "Such a noncustodial situation is not converted to one in which *Miranda* applies simply because a reviewing court concludes that, even in the absence of any formal arrest or restraint on freedom of movement, the questioning took place in a 'coercive environment.' Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question. *Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house*, or because the questioned person is one whom the police suspect. *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.' " (*Oregon* v. *Mathiason, supra*, 429 U.S. at p. 495 [50 L.Ed.2d at p. 719], italics added.)

Similarly, in *California* v. *Beheler, supra*, 463 U.S. 1121, the court found that a person who called the police to report that his associate had killed someone and who agreed to accompany the police to the station house for questioning was not in custody during the 30-minute interview that followed. The court rejected the lower court's focus on the facts that the interview took place in the station house and that the defendant was a suspect when he was questioned. "[W]e have explicitly recognized that *Miranda* warnings are not required 'simply because the questioning takes place in the station house or because the questioned person is one whom the

police suspect.'" (*California* v. *Beheler, supra,* 463 U.S. at p. 1125 [77 L.Ed.2d at pp. 1279-1280].)

Defendant argues these cases are inapposite because they involve station house interviews that did not take place in the jail section of the police station. He emphasizes that he had to pass through a locked parking structure and a locked entrance to the jail to get to the interview room where he made his statement. Even if the facts in *Oregon* v. *Mathiason, supra,* 429 U.S. 492, and *California* v. *Beheler, supra,* 463 U.S. 1121, are somewhat different from the facts in this case, however, the distinction is not critical. We have previously found similar questioning in a locked interview room in the police station to be noncustodial. In *Green* v. *Superior Court* (1985) 40 Cal.3d 126, 136 [219 Cal.Rptr. 186, 707 P.2d 248], for example, though the defendant was interviewed in a locked room, the record did not reveal whether the defendant realized that the interview room was locked, and we found the evidence did not compel the conclusion that the defendant could not have left or felt he could not have left at any time during the interview.

Here, although defendant had been admitted to the jail section of the police station through locked doors and would have needed assistance to leave the facility, these facts alone do not establish that he was in custody. There is no evidence to indicate that a reasonable person in his position would feel that assistance in leaving the facility would not be forthcoming. As we have noted, the officer who was interviewing defendant told him he was being questioned as a possible witness, a statement that would convey to the reasonable person the impression he or she was not in custody. Defendant was under no restraint in the interview room, which was an ordinary room with a table and three or four chairs, and without bars. Further, the questioning itself was not accusatory. (Cf. *People* v. *Holloway, supra,* 50 Cal.3d at p. 1115 [no custody when defendant, handcuffed in parole agent's office, is released from handcuffs and agrees to come to police station for questioning, which is neither aggressive nor accusatory]; *People* v. *Spears* (1991) 228 Cal.App.3d 1, 23-26 [278 Cal.Rptr. 506] [no custody during lengthy but nonconfrontational questioning in interview room in sheriff's station]; see also *Davis* v. *Allsbrooks* (4th Cir. 1985) 778 F.2d 168 [no custody during voluntary interview at police station].)

Accordingly, after independent review of the undisputed facts set forth in the record of the proceedings below, we conclude for the reasons stated

above that defendant was not in custody when he made the statements at issue here. The judgment is affirmed.[3]

**MOSK, J.,** Concurring and Dissenting.—I concur in the judgment in all respects save one: I dissent from the affirmance of the sentence of death because of the complete absence of any mitigating evidence or argument at the penalty phase. I reiterate in its entirety the concurring and dissenting opinion I authored when this cause was originally before us, which sets forth my views at length. (*People* v. *Stansbury* (1993) 4 Cal.4th 1017, 1073-1075 [17 Cal.Rptr.2d 174, 846 P.2d 756] (conc. & dis. opn. of Mosk, J.).)

Appellant's petition for a rehearing was denied May 24, 1995. Mosk, J., was of the opinion that the petition should be granted.

---

[3]Given our disposition, it is unnecessary to reach the People's claim that any error in admitting defendant's statements was harmless.