Filed 5/7/15  In re J.S. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re J.S. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> A.S. et al., <br><br> Defendants and Appellants. | E062259 <br><br> (Super.Ct.Nos. J248187 & J248188) <br><br> OPINION |

APPEAL from the Superior Court of San Bernardino County.  A. Rex Victor, Judge.  (Retired judge of the San Bernardino Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Michele Anne Cella, under appointment by the Court of Appeal, for Defendant and Appellant A.S.

Mitchell Keiter, under appointment by the Court of Appeal, for Defendant and Appellant P.B.

1

Jean-Rene Basle, County Counsel, and Kristina M. Robb, Deputy County Counsel, for Plaintiff and Respondent.

A.S. (mother) and P.B. (father) appeal from an order terminating their parental rights to their two sons.

The father contends the juvenile court erred by refusing to let him call the children as witnesses.

The mother contends the juvenile court erred by finding that the "beneficial parental relationship" exception to termination of parental rights did not apply. (Welf. & Inst. Code, § 366.26, subd. (c)(1)(B)(i).)

We find no reversible error. Accordingly, we will affirm.

I

PROCEDURAL BACKGROUND

The mother and the father have two sons together, N.S. and J.S. N.S., the older boy, was born in 2007; he was five when this dependency was filed, and he is seven now. J.S., the younger boy, was born in 2010; he was two when this dependency was filed, and he is five now.

The father is the presumed and biological father of J.S. He is the presumed father, but not the biological father, of N.S.

In December 2012, San Bernardino County Children and Family Services (CFS) received a report that the children were being abused. Further investigation revealed that

2

the mother had substance abuse and mental health issues. The mother admitted that both she and the father had engaged in domestic violence.

The father had prior convictions for possession of ephedrine with the intent to manufacture methamphetamine, possession of a controlled substance, driving under the influence, carrying a loaded firearm in a public place, unlawful possession of a firearm, and unlawful possession of ammunition. Also, in 1997, he had been convicted of molesting a 10-year-old girl in Kentucky.

As a result, CFS detained the children and filed dependency petitions as to them. They were placed in a foster home.

In June 2013, at the jurisdictional/dispositional hearing, the juvenile court found jurisdiction based on failure to protect. (Welf. & Inst. Code, § 300, subd. (b).) It formally removed the children from the parents' custody. It ordered reunification services for the mother; however, it denied them for the father.

In December 2013, the children were placed with foster parents who wanted to adopt them.

In January 2014, at the six-month review hearing, the juvenile court terminated the mother's reunification services and set a hearing pursuant to Welfare and Institutions Code section 366.26 (section 366.26).

In October 2014, at the section 366.26 hearing, the juvenile court found that the children were adoptable and that there was no applicable exception to termination. Accordingly, it terminated parental rights.

3

## II

### REFUSAL TO LET THE CHILDREN TESTIFY

The father contends the juvenile court erred by refusing to let him call the children as witnesses.

A.      *Additional Factual and Procedural Background.*

On the date set for the section 366.26 hearing, in the morning, the juvenile court took up various "housekeeping" matters.  This discussion ensued:

"[MINORS' COUNSEL]:  I believe father's attorney would like to have [J.S.] testify.  [J.S.] is only four years old.

"THE COURT:  Yes.

"[MINORS' COUNSEL]:  We would submit it to the Court, but we would ask that the minor not be forced to testify.  If the minor is going to be placed on the stand, we'd ask that it be in chambers.

"[FATHER'S COUNSEL]:  We are willing to have father outside of the courtroom if it would make the child more comfortable.  We are certainly fine with the child testifying at counsel table.

"THE COURT:  Well, I am not certain the kid is going to testify at all at four years of age on this matter."

The mother's counsel then asked to also call N.S.

Minors' counsel continued:

"[MINORS' COUNSEL]: We would ask for an offer of proof for the four-year-old. We can — I understand that the minor can say he doesn't want to be adopted, but —

"[DEPARTMENT'S COUNSEL]: And, your Honor, I don't believe . . . — I am not sure that the children were requested to be present —

"[MOTHER'S COUNSEL]: This —

"[DEPARTMENT'S COUNSEL]: — at the further .26 hearing, at least I don't reflect that in my notes when this matter was continued. They usually would not be here given their age. Unless the specific request was made, I don't think they are going to be here."

Minors' counsel stated, "I think the father's counsel asked [us] to have the minors present, but we only tried to get the four-year-old present."

The trial court ruled, "I'm not inclined, since they weren't ordered to be here, to delay this matter further."

In the afternoon, at the section 366.26 hearing proper, minors' counsel noted that both children were in the "dayroom" but added that they had "indicated they do not want to be present before the Court." There was no further discussion about calling the children.

B.      *Analysis.*

CFS responds that the father forfeited this issue by failing to raise it in the afternoon session. We do believe the father was required to raise the issue again in the afternoon session to the extent that the circumstances had changed between the morning

5

and the afternoon. We further conclude that, in this appeal, he has forfeited any challenge to the trial court's morning ruling.

According to the father: "Witnesses may be excused from testifying if they are not competent, or if testifying would inflict emotional trauma. Neither ground justified the exclusion of the children's testimony." He argues that there was no evidence that the children were not competent to testify. He also argues that that there was no evidence that testifying would have been traumatic for them.

*Had the trial court actually ruled* in the morning session that the children (1) were not competent to testify or (2) would be traumatized by testifying, the father's arguments to the contrary would be preserved. Nothing changed between the morning and the afternoon that would relate to the children's competence and/or traumatization. The father's counsel could reasonably conclude that to ask to call the children again in the afternoon would be futile. (See Evid. Code, § 354, subd. (b); see also *People v. Welch* (1993) 5 Cal.4th 228, 237-238.)

However, that is not how we read the trial court's ruling.

In the morning session, it was not entirely clear whether the children were available at the courthouse. CFS's counsel said, "I am not sure that the children were requested to be present" and added, "They usually would not be here given their age. Unless the specific request was made, I don't think they are going to be here." Minors' counsel (somewhat ambiguously) said he had "tried" to have J.S. present; however, he did not say that J.S. actually was present.

6

Admittedly, the trial court did remark, "I am not certain the kid is going to testify at all at four years of age on this matter." However, this was not the basis of its ruling. Rather, it ruled, "I'm not inclined, since they weren't ordered to be here, to delay this matter further." Evidently it meant that calling the children to testify would require a continuance, and a continuance was not warranted.

The father's *only* response is that the children were at the courthouse, so no continuance was necessary. At the morning session, however, this was not apparent. Not until the afternoon session did minors' counsel make it clear that the children were at the courthouse. Nevertheless, the father did not renew his request to call them to testify. This forfeited any argument that they were available to testify without the need for a continuance. (See *People v. Morris* (1991) 53 Cal.3d 152, 190 [motion in limine preserves evidentiary issue only if, among other things, "the motion is made at a time before or during trial when the trial judge can determine the evidentiary question in its appropriate context"], disapproved on other grounds in *People v. Stansbury* (1995) 9 Cal.4th 824, 830, fn. 1.)

In sum, we conclude that the father's actual arguments have not been forfeited, but they are inapposite; they do not challenge the trial court's actual ruling. Moreover, the father has forfeited any challenge to the trial court's actual ruling.

7

III

THE BENEFICIAL PARENTAL RELATIONSHIP EXCEPTION

The mother contends that the juvenile court erred by finding that the "beneficial parental relationship" exception to termination of parental rights did not apply. (Welf. & Inst. Code, § 366.26, subd. (c)(1)(B)(i).)

A.   *Additional Factual and Procedural Background.*

The evidence before the juvenile court at the section 366.26 hearing consisted of three specified social worker's reports, plus oral testimony. We confine our review to this evidence (see Welf. & Inst. Code, § 366.26, subd. (b)), which showed the following.

Initially, the mother had had visitation twice a week, for two hours at a time. Nine months before the section 366.26 hearing, however, this had been reduced to once a month, for two hours at a time.

The children were happy to see the mother and upset when the visits ended. They called her "'Mommy.'" (However, they used similar terminology for the prospective adoptive parents.) According to the prospective adoptive parents, "the children are excited to see mother as she brings gifts."

The mother played with the children. She brought snacks or lunch. If they misbehaved, she redirected them. If they needed something, they would go either to the mother or to the prospective adoptive parents, depending on who was closer.

By the time of the section 366.26 hearing, the children had been placed with the prospective adoptive parents for 10 months. There was "an obvious strong attachment"

8

between the children and the prospective adoptive parents. A social worker reported that the children "display appropriate affection to [the prospective adoptive parents] which is reciprocated."

B. *Analysis*.

"Adoption is the Legislature's preferred permanent plan. [Citation.]" (*In re D.M.* (2012) 205 Cal.App.4th 283, 290.) Thus, as a general rule, at a section 366.26 hearing, if the juvenile court finds that the child is adoptable, it must terminate parental rights. (Welf. & Inst. Code, § 366.26, subds. (b)(1) & (c)(1).) There is an exception to this rule, however, if "[t]he court finds a compelling reason for determining that termination would be detrimental to the child" (*id.*, subd. (c)(1)(B)) for one of six specified statutory reasons. (*Id.*, subd. (c)(1)(B)(i)-(vi).) One such reason is that "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (*Id.*, subd. (c)(1)(B)(i).)

"The 'benefit' prong of th[is] exception requires the parent to prove his or her relationship with the child 'promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents.' [Citations.]" (*In re K.P.* (2012) 203 Cal.App.4th 614, 621.) "'To trigger the application of the parental relationship exception, the parent must show the parent-child relationship is sufficiently strong that the child would suffer detriment from its termination.' [Citation.]" (*In re Marcelo B.* (2012) 209 Cal.App.4th 635, 643.)

9

"'[B]ecause a section 366.26 hearing occurs only after the court has repeatedly found the parent unable to meet the child's needs, it is only in an extraordinary case that preservation of the parent's rights will prevail over the Legislature's preference for adoptive placement.' [Citation.]" (*In re K.P.*, *supra*, 203 Cal.App.4th at p. 621.)

It is not entirely clear whether we review the trial court's finding on this issue under a substantial evidence standard or an abuse of discretion standard. (See generally *In re K.P.*, *supra*, 203 Cal.App.4th at pp. 621-622.) But "[t]he practical differences between the two standards of review are not significant. '[E]valuating the factual basis for an exercise of discretion is similar to analyzing the sufficiency of the evidence for the ruling. . . . Broad deference must be shown to the trial judge. The reviewing court should interfere only "'if [it] find[s] that under all the evidence, viewed most favorably in support of the trial court's action, no judge could reasonably have made the order that he did'. . .'" [Citations.]" (*In re Jasmine D*. (2000) 78 Cal.App.4th 1339, 1351.)

CFS concedes that the mother maintained regular visitation and contact. It argues, however, that she failed to demonstrate the necessary beneficial relationship. We agree. Admittedly, she proved a friendly and loving relationship; arguably, she even proved a parental relationship. What she did not prove, however, was that termination of this relationship would be detrimental.

By the time of the section 366.26 hearing, the children had bonded to the prospective adoptive parents. They saw the mother for only two hours a week, once a month. Even during visits, they did not appear to have a *more* beneficial relationship to

10

her than to the prospective adoptive parents. If they had a need, they would go to whoever was closer. While they were upset or cried when visits were over, there was no evidence that they pined for her in between visits. Thus, there was insufficient evidence to justify depriving them of the well-being they would gain in a permanent home with adoptive parents.

The mother argues that termination would be detrimental because "[s]he was their first and most primal adult bond." In other words, being adopted, in itself, would constitute detriment. That upends the legislative preference for adoption. For this case to get as far as a section 366.26 hearing, the juvenile court had to find — repeatedly — that being in the mother's custody would be detrimental to the child. (Welf. & Inst. Code, §§ 319, subd. (b) [detention hearing], 366.21, subd. (e) [six-month review hearing].) While it may be true that, in ordinary families, it is good for a child to remain with his or her natural parents, once a family has gone so awry that a court is contemplating the termination of parental rights, we cannot just assume this; quite the contrary, the Legislature has forbidden us to do so.

The mother also relies on evidence and testimony from earlier hearings. As already discussed, however, these were not before the juvenile court when it made the challenged ruling. If the mother wanted the juvenile court to consider them, she should have introduced them at the section 366.26 hearing.

We therefore conclude that the juvenile court properly declined to find that the beneficial parental relationship exception applied.

11

IV

DISPOSITION

The order appealed from is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ                     
                                P. J.

We concur:


MILLER                
                J.


CODRINGTON            
                J.