Filed 6/17/24  P. v. Villalobos CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MANUEL AGUILAR VILLALOBOS,<br><br>    Defendant and Appellant. | 2d Crim. No. B328524<br>(Super. Ct. No. 2022023535)<br>(Ventura County) |

Manuel Aguilar Villalobos appeals from the judgment after a jury convicted him for 11 counts of sexual offenses against four victims under the age of 16.  He was sentenced to an aggregate term of 130 years to life plus six years and 8 months in state prison.  He contends the trial court erred by admitting statements he made in violation of *Miranda v. Arizona* (1966) 384 U.S. 436, and that trial counsel rendered ineffective assistance by failing to challenge the time periods pleaded in the information. We affirm.

FACTUAL AND PROCEDURAL HISTORY

The felony information alleged Villalobos committed lewd acts on a child under the age of 14 (Pen. Code,[1] § 288, subd. (a); counts 1-2 (D.G.)); unlawful sexual intercourse on a minor under the age of 16 (§ 261.5, subd. (d); count 3 (D.G.)); oral copulation of a child under the age of 16 (§ 287, subd. (b)(2); count 4 (D.G.), lewd acts on a child who was 14 or 15 (§ 288, subd. (c)(1); counts 5-6 (D.G.)); possession of child pornography of a minor under the age of 18 (§ 311.11, subd. (a); count 7 (D.G.)); a lewd act on a child under the age of 14 (§ 288, subd. (a); count 8 (G.B.)); lewd acts on a child under the age of 14 (§ 288, subd. (a); counts 9-10 (Y.L.)); and a lewd act on a child under the age of 14 (§ 288, subd. (a); count 11 (E.V.)).

*Counts 1-7—D.G.*

D.G. was born in May 2006, and was 16 years old at the time of trial. Villalobos was born in 1960. Villalobos was friends with D.G.'s mother. D.G. estimated she was between five and nine years old when Villalobos first touched her vagina. She testified she was 11 or 12 years old when Villalobos touched her vagina another time in his car. Thereafter, they developed a relationship where he would take her shopping or give her money if he touched her vagina. When she was about 14 years old, Villalobos began touching more parts of her body, including her breasts and bottom. He took photos of naked parts of her body while they were in his car. Villalobos once offered three or four hundred dollars to have sex with her. She testified that he put a part of his penis inside her vagina, but stopped when she told

_____

[1] Further unspecified statutory references are to the Penal Code.

2

him to stop. D.G. also testified that "sometimes," she would perform oral sex on him.

Oxnard Police detectives Hayley Navarro and Adam Aguilar spoke to D.G. and G.B in September 2022. Later the same day, the detectives went to Villalobos's home and spoke to him outside his home. During the recorded interview, Villalobos admitted touching D.G.'s vagina and breasts on multiple occasions within the previous year. He said he took her shopping and gave her money on many occasions. He admitted photographing her with her vagina exposed in his car within the previous year. The photos were later found on his phone. Villalobos also admitted attempting to have sex with D.G., but he stopped when she said the slight contact was painful.

The police later interviewed Villalobos at the police station. Villalobos again admitted taking photos of D.G.'s vagina in his car within the previous year. He said she was 15 years old at the time the photos were taken.

*Count 8—G.B.*

G.B. was born in June 2009 and was 13 years old at the time of trial. She was friends with Villalobos's daughter and would sometimes play at his home. She was between five to nine years old when Villalobos picked her up and touched her vagina.

*Counts 9-10—Y.L.*

Y.L. was born in March 1996 and was 26 years old at the time of trial. She testified she knew Villalobos through her uncle. She was about 11 or 12 years old when Villalobos babysat her and her siblings. Villalobos placed her on his lap and touched her vagina. Later the same evening, he took her to the restroom, picked her up, and kissed her on the lips.

3

*Count 11—E.V.*

E.V. was born in May 2009 and was 13 years old at the time of trial.  She was Villalobos's neighbor and friends with his daughter.  When she was about seven years old, she was at his home when he exposed his penis, grabbed her hand, and forced her to touch his penis outside his pants.

*Defense evidence*

Villalobos testified on his own behalf.  He denied inappropriately touching Y.L., G.B., or E.V.  He also denied having a sexual relationship with D.G. or having sexual photographs of her on his phone.

*Verdict and sentence*

The jury found Villalobos guilty on all counts.  In a bifurcated trial, the jury found true special allegations, including that Villalobos committed crimes against multiple victims (§ 667.61, subd (e)(4)), committed the crimes against multiple victims under the age of 14 (*ibid.*), and took advantage of a position of trust and the victims were particularly vulnerable.  He was sentenced to 130 years to life and six years eight months in state prison.

DISCUSSION

Miranda

Villalobos contends the statements he made during an interview outside his home were obtained in violation of *Miranda.*  We disagree.

*1.  Relevant background*

Officer Aguilar testified that he, Officer Navarro, and a social worker went to Villalobos's home to interview him.  Aguilar waited outside his home, saw Villalobos's car pull up to the house, and approached Villalobos outside after he parked his car.

4

The officers never drew their weapons.  Aguilar spoke to him in Spanish.  Aguilar told Villalobos that he was not under arrest, and Villalobos indicated he understood.  During the interview, Aguilar used an interrogation deception technique of telling Villalobos that the police had DNA evidence.  Villalobos responded, "I need to talk to a lawyer to answer that."  Aguilar clarified that Villalobos was not under arrest, and continued to question him.

During the interview, Villalobos admitted touching D.G.'s vagina and breasts multiple times, photographing her nude and her "private part," and attempting to have sex with her.  Villalobos also showed Aguilar photos on his phone.  At the end of the interview, Aguilar arrested Villalobos, and transported him to the police station.  The officers did not advise Villalobos of his *Miranda* rights while outside his home.

At the police station, while Aguilar was setting up the interview room, Villalobos mentioned "something about an attorney" in passing.  Aguilar asked if Villalobos wished to speak to Aguilar, and Villalobos responded "yes."  Aguilar asked if Villalobos wished to speak to an attorney, and he responded, "Whatever you want."  Aguilar clarified, "[I]t's your choice."  Aguilar then read Villalobos his *Miranda* rights.  Afterward, Aguilar asked Villalobos again if he wished to speak to an attorney, and Villalobos said he understood his rights and continued to speak with Aguilar.  Villalobos again admitted taking photos of D.G. with her vagina exposed.  When Aguilar asked more questions about photos on Villalobos's phone, Villalobos requested an attorney, and Aguilar concluded the interview.

Villalobos moved to exclude his statements, arguing they violated *Miranda*. The trial court ruled that the statements made at the police station were admissible because they were made after Villalobos was advised of his *Miranda* rights. As to the statements Villalobos made outside his home, the court found there was no violation of Villalobos's rights because he had not been under arrest when he mentioned an attorney. When Villalobos said, "I need a lawyer to answer that," the court found that Aguilar "stated again that defendant could [talk to an attorney] if he would like to but that he was not under arrest." The court also noted there "was no inquiry from either party whether [Villalobos] was released, so the assumption is he was released. Therefore, even though he did mention a lawyer, *Miranda* was not invoked at that point."

### 2. Analysis

We conclude the statements Villalobos made outside his home did not violate *Miranda* because the police interview was not custodial.

*Miranda* warnings are required only when a defendant is in custody. (*People v. Stansbury* (1995) 9 Cal.4th 824, 833.) "An interrogation is custodial when 'a person has been taken into custody or otherwise deprived of [their] freedom of action in any significant way.' " (*People v. Leonard* (2007) 40 Cal.4th 1370, 1400 (*Leonard*).) "Whether a person is in custody is an objective test; the pertinent inquiry is whether there was " ' " 'a "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest.' " ' " (*Ibid.*) This presents "a mixed question of law and fact," requiring us to " 'apply a deferential substantial evidence standard' [citation] to the trial court's factual findings regarding the circumstances surrounding

6

the interrogation, and . . . independently decide whether, given those circumstances, 'a reasonable person in [the] defendant's position would have felt free to end the questioning and leave.' " (*Ibid.*)

Circumstances to consider when determining whether a person was in custody during an interview include whether they were under arrest, the length and location of the interview, " 'the ratio of officers to suspects,' " and " 'the demeanor of the officer, including the nature of the questioning.' " (*People v. Davidson* (2013) 221 Cal.App.4th 966, 972.)  Other circumstances include whether police told the person they were "considered a witness or suspect," "whether there were restrictions on the [person's] freedom of movement," whether the police officer's tone was aggressive or accusatory, whether police otherwise pressured the person, and whether the person was arrested at the end of the interrogation.  (*Ibid*; *People v. Torres* (2018) 25 Cal.App.5th 162, 172-173.)  "No single factor is dispositive."  (*Torres*, at p. 173.)

Based on the circumstances here, we conclude Villalobos was not in custody.  Villalobos was interviewed outside of his home in Spanish (Villalobos's language) and allowed Aguilar to look through his phone.  Villalobos was not handcuffed, nor was his freedom of movement restrained.  The two officers who participated in the interview did not draw their weapons.  Nothing in the record reflects Villalobos indicated he wanted to terminate the interview with Aguilar.

Even though Officer Aguilar told Villalobos there was DNA evidence, the record does not reflect Aguilar was overly aggressive or confrontational.  "[P]olice expressions of suspicion, with no other evidence of a restraint on the person's freedom of movement, are not necessarily sufficient to convert voluntary

7

presence at an interview into custody." (*People v. Potter* (2021) 66 Cal.App.5th 528, 541.) And when Villalobos said he needed a lawyer to answer questions about DNA evidence, Aguilar clarified that Villalobos was not under arrest. Villalobos indicated that he understood he was not under arrest. (See *People v. Chutan* (1999) 72 Cal.App.4th 1276, 1282 [an express advisement that the defendant was not under arrest was a factor weighing in favor of noncustody].) Under these circumstances, a reasonable person in Villalobos's position would have felt free to end the questioning and leave. (*Leonard*, *supra*, 40 Cal.4th at p. 1400.)

Villalobos also argues the trial court erred in finding that he was released at some point during the interview outside his home. Regardless of whether the court erred in making that finding, we conclude the interview was noncustodial under the circumstances here.

*Ineffective assistance of counsel*

Villalobos contends his trial counsel rendered ineffective assistance when he did not object to the range of dates pleaded in the information. We are not persuaded.

The information alleged counts 1-2 occurred on or about May 1, 2011, through May 16, 2020, counts 3 through 6 occurred on or about May 17, 2020, through May 16, 2022, count 8 occurred on or about June 1, 2015, through January 1, 2020, counts 9 and 10 occurred on or about January 1, 2007, through January 1, 2010, and count 11 occurred on or about May 1, 2016, through June 1, 2017.

A defendant alleging ineffective assistance must prove (1) deficient performance, and (2) resulting prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 687; *People v. Riel* (2000) 22

8

Cal.4th 1153, 1175.)  We need not address both prongs of this test.  If a defendant fails to establish either prong, the claim should be denied.  (*Strickland,* at p. 697.)

Villalobos has not carried his burden to show counsel's performance was deficient.  If " ' "the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the claim on appeal must be rejected.' " (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266.)  The record here is silent as to why counsel did not object, and counsel could have had a legitimate tactical reason for not doing so.  (*People v. Majors* (1998) 18 Cal.4th 385, 403 [the record must affirmatively disclose the lack of a rational tactical purpose].)

For instance, counsel could have reasonably determined that objecting would have been futile.  (*People v. Price* (1991) 1 Cal.4th 324, 387.)  In *People v. Jones* (1990) 51 Cal.3d 294, our Supreme Court considered the due process implications when a young victim of a perpetrator who has continuous access is unable to give specific details regarding the time, date, and location of alleged sexual assaults.  (*Id.* at p. 299.)  The high court concluded that in a prosecution by information, it is "the transcript of the preliminary hearing, not the accusatory pleading, [that] affords [a] defendant practical notice of the criminal acts against which he [or she] must defend."  (*Id.* at p. 317.)

Villalobos argues the time frames were so "vague as to time" and occurred so long ago that he was "unable to fairly defend himself" as a result.  But at his preliminary hearing, Villalobos was given notice of the allegations against him,

9

including the specific sexual offenses alleged for each victim and their ages when the offenses occurred.  There is also substantial evidence that Villalobos had access to the victims during several years at his home and car.  Nothing in the record indicates that Villalobos did not understand the nature of the charges.

Villalobos cites to no authority holding that a charging document alleging crimes over a nine-year time frame stretches *Jones* beyond its constitutional limits.  (See *People v. Wilson* (2020) 56 Cal.App.5th 128, 156; *People v. Gear* (1993) 19 Cal.App.4th 86, 95; *Brodit v. Cambra* (9th Cir. 2003) 350 F.3d 985, 988-989 [approving the appellate court's application of *Jones* where charged date ranges spanned multiple years].)  On this record, we cannot say counsel rendered ineffective assistance for not objecting to the time periods pleaded in the information.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

BALTODANO, J.

We concur:

GILBERT, P. J.

CODY, J.

10

Paul W. Baelly, Judge

Superior Court County of Ventura

_____

Spolin & Dukes, Aaron Spolin and Caitlin Dukes for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Mark A. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.