Filed 12/13/24  P. v. Posada CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G062848 |
| v. | (Super. Ct. No. 19CF0559) |
| PABLO AMAYA POSADA, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Gassia Apkarian, Judge. Affirmed.

Jennifer A. Gambale, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Daniel

Rogers, Alana Cohen Butler and Amanda Lloyd, Deputy Attorneys General, for Plaintiff and Respondent.

*      *      *

A jury convicted defendant Pablo Amaya Posada of multiple counts of aggravated sexual assault and forcible lewd acts in connection with his repeated molestation of his then-wife's younger sister. The victim, J.V., reported the abuse to police when she was 25 years old, and police arranged a covert telephone call by J.V. to Posada, during which Posada made statements acknowledging he had sexually abused her.[1] The trial court admitted the audio recording and transcript of the covert call into evidence at trial over Posada's objection. On appeal, Posada contends his statements were involuntary and should have been excluded from evidence. We disagree and affirm.

BACKGROUND

Posada sexually abused J.V. for over 10 years. At the age of 25, J.V. went to the police and told them she had been abused by Posada as a child. The next day, officers arranged for J.V. to make a covert call to Posada.

Two officers were present in the room with J.V. during her call to Posada. Law enforcement officers directed J.V. what to say, including providing her a guide of what to talk about and aiding her during the call by taking notes and providing direction as to topics. J.V. did not tell Posada she was at the police station in the presence of law enforcement, that she was calling at their direction, or that the call was being recorded. Posada asked

_____

[1] A covert call is a recorded telephone conversation between a suspect and a victim supervised by law enforcement with the goal of getting a suspect to confess or admit to a crime.

J.V. three times if she was recording the conversation, and each time she responded she was not.

During the call, J.V. told Posada she was having a hard time dealing with the things he did to her, wanted to move past them, and was asking for his help. She said she wanted to forgive him, but wanted to understand the reasons he did the things to her when she was "very little," since she was "five years old." Posada responded that she was "like seven years old," and not five, when this all started and that he had suffered sexual abuse as a child, and he did it to her "because it was a chain, a small chain of sins." When J.V. asked Posada why he touched her, he said the "devil was talking to [him]." Posada went on to say words to the effect that when he hugged her, it gave him the desire to touch her, and watching pornography put sexual things in his mind. He told her he was sorry. He admitted touching her vagina three or four times, having her touch his penis, and attempting to have her orally copulate him. He admitted doing sexual things to her about seven times, but he did not remember everything because it got erased from his memory. He said, "the Lord erased all that from me when I re-discovered him." When asked if he remembered having her touch his penis, he said he remembered one such encounter when she was 10 years old.

Over defense counsel's objections,[2] the People played for the jury the audiotape of the conversation and received a written transcript of the call. Both J.V. and Posada testified at trial. Posada admitted at trial he had touched J.V. inappropriately on three occasions, including touching her vagina over her clothes. On one occasion, Posada testified J.V. approached

[2] Posada's counsel objected to the admission of the covert call on the grounds that J.V. lied to him when he asked if the call was being recorded, and his statements were not voluntary.

3

him and sat on "[his] parts" and "move[d] around." So he "touched her vagina so that she would get away." Posada admitted touching J.V.'s vagina over her clothes, exposing his penis to her, and asking J.V. to touch his penis, which she did. Posada testified, "[w]hen you do something—for example, the first time I touched her—it's just easier to proceed and do further things." Posada denied all other allegations made by J.V., including sexual penetration and oral copulation.

The jury convicted Posada of two counts of aggravated sexual assault of a child (sexual penetration) (Pen. Code, § 269, subd. (a)(5) [counts 1 and 2]),[3] two counts of aggravated sexual assault of a child (oral copulation) (§ 269, subd. (a)(4) [counts 3 and 4]), and two counts of committing a forcible lewd act on a child aged 14 years or younger (§ 288, subd. (b)(1) [counts 5 and 6]). The court sentenced Posada to a total of 80 years to life in prison. Posada appealed.

DISCUSSION

Posada contends J.V. was acting as an agent of law enforcement during the covert call and his statements were involuntary and should have been excluded at trial. We need not decide whether J.V. was acting as an agent of law enforcement at the time of the call because we conclude nothing in J.V.'s questioning or the circumstances of the call was so coercive as to overcome Posada's free will. Posada's admissions were voluntary, and the trial court properly admitted them.

"'"The Fourteenth Amendment of the federal Constitution and article I, section 7 of the California Constitution make 'inadmissible any involuntary statement obtained by a law enforcement officer from a criminal

_____

[3] All further statutory references are to the Penal Code.

suspect by coercion.'" [Citation.] The prosecution must prove by a preponderance of the evidence that a defendant freely and voluntarily gave police statements before the statements can be admitted. [Citation.] "'Voluntariness does not turn on any one fact, no matter how apparently significant, but rather on the "totality of [the] circumstances."'" [Citation.] The test considers several factors, including any element of police coercion, the length of the interrogation and its location and continuity, and the defendant's maturity, education, and physical and mental health. [Citation.] The determinative question "'is whether defendant's choice to confess was not "essentially free" because his will was overborne.'"'" (*People v. Suarez* (2020) 10 Cal.5th 116, 157–158.)

"In evaluating a claim of psychological coercion, the 'question . . . posed is whether the influences brought to bear upon the accused were "such as to overbear [his] will to resist and bring about confessions not freely determined."'" (*People v. Kelly* (1990) 51 Cal.3d 931, 952.) "[W]e conduct an independent review of the trial court's legal determination and rely upon the trial court's findings on disputed facts if supported by substantial evidence." (*People v. Williams* (2010) 49 Cal.4th 405, 425; see *People v. Winbush* (2017) 2 Cal.5th 402, 452 [same].)

Having reviewed the covert call, we reject Posada's contention that his statements were coerced and involuntary. (See *Colorado v. Connelly* (1986) 479 U.S. 157, 167 [coercive police activity is a necessary predicate to finding a confession was not voluntary].) The conversation took place over the telephone, and Posada was not in police custody. He did not know police were involved in the call, and he was free to end the conversation at any time. J.V. said nothing that would suggest any physical intimidation, psychological or other coercion, promises of leniency, or threats.

Posada makes several arguments in support of his contention that his statements were involuntary. First, he contends J.V. appealed to his belief in God. Specifically, Posada points to J.V.'s statement that if "[y]ou really want to heal with God, I need you to tell me all these things that you did to me, because I need to heal too and if you don't tell me this. [¶] . . . [¶] I'm never going to heal okay." This statement did not render Posada's admissions to abusing J.V. involuntary. Discussing religion with a suspect is not, by itself, an impermissible coercive interrogation technique. (See *People v. Kelly, supra*, 51 Cal.3d at pp. 951–953 [questions about belief in Jesus, going to heaven, Christian upbringing, and violating Christian values did not render confession involuntary].) Also, J.V.'s statement about God did not "appear to have been a motivating cause behind defendant's subsequent confession." (*Id.* at p. 953.) It was made *after* Posada had already admitted to touching her vagina three or four times. Further, it was Posada, not J.V., who first mentioned God—and who then repeatedly returned to the subject of God and religion—throughout the call. Posada also continued to deny many of J.V.'s accusations, even after she made a statement about God, telling her certain of her accusations were in her "imagination," which is further evidence that J.V.'s single reference to God did not coerce him into confessing.[4] Much of the conversation involved Posada talking about God, telling J.V. the devil had caused him to touch her, asking J.V. for forgiveness, telling J.V. he was praying and saying a rosary for her, and lecturing her

---

[4] During the call, Posada repeatedly insisted he never penetrated J.V. or put his penis into her mouth, although as to the latter, he admitted he tried to do so when J.V. was eight or nine years old, but did not because J.V. pushed him and said "no."

about God, healing, and forgiveness. Posada repeatedly told J.V. she should go to a priest and "confess," and go to a retreat so she will "forget all that."

Posada also contends J.V. engaged in a psychological ploy to get him to confess by appealing to his sympathy for her, because he regarded her as a daughter and she was in distress. We find nothing coercive or improper about J.V. attempting to get Posada to tell her the truth about what happened, explaining to Posada the harm his conduct had caused her, and trying to awaken his sense of guilt or shame.[5] (See *People v. Carrington* (2009) 47 Cal.4th 145, 176 [detective's comments "that 'purg[ing] it all' was morally the right thing to do and would provide [the defendant] with psychological relief" were not coercive]; *People v. Davis* (2009) 46 Cal.4th 539, 600 [merely advising suspect it would be better to tell the truth does not render confession involuntary]; *People v. Howard* (1988) 44 Cal.3d 375, 398.)

In addition, Posada argues that J.V.'s failure to tell him law enforcement was listening to and recording their conversation and the failure to inform him of his *Miranda*[6] rights all contributed to his statements being involuntary. We disagree.

As to his argument pertaining to *Miranda*, Posada argues that not being told of his *Miranda* rights "only increased the coerciveness of the covert call" because he was unaware his statements could be used against him. However, Posada was not in custody, so *Miranda* warnings were not required. (*People v. Stansbury* (1995) 9 Cal.4th 824, 833; *People v. Chutan* (1999) 72 Cal.App.4th 1276, 1282.) Posada fails to cite any legal authority in

---

[5] During the call, J.V. repeatedly told Posada she wanted to know why he abused her and that she needed closure to move on with her life.

[6] *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

support of his argument that his lack of awareness that his statements to J.V. could be used against him somehow made the conversation coercive.

As to Posada's argument that he was unaware law enforcement was involved and that the call was being recorded, "[d]eception does not necessarily invalidate an incriminating statement." (*People v. Maury* (2003) 30 Cal.4th 342, 411; see *People v. Orozco* (2019) 32 Cal.App.5th 802, 819 [police trickery does not alone render a confession involuntary].) "'The use of deceptive statements during an investigation does not invalidate a confession as involuntary unless the deception is the type likely to procure an untrue statement.'" (*People v. Fayed* (2020) 9 Cal.5th 147, 165.) Here, nothing in the conversation between J.V. and Posada, including J.V.'s nondisclosure of the real purpose of the call and that it was being recorded, was likely to procure a false admission.

Moreover, the cases relied upon by Posada in support of his argument that the conversation was psychologically coercive are inapplicable. For instance, *People v. Montano* (1991) 226 Cal.App.3d 914, involved flagrant *Miranda* violations by law enforcement involving a suspect who was *in custody*. Similarly, *Williams v. Brewer* (S.D. Iowa 1974) 375 F.Supp. 170, involved law enforcement depriving a suspect of his right to counsel under the Sixth Amendment while he was in custody.

Finally, Posada argues J.V. made implied promises of leniency to him during the covert call. (See *People v. Ray* (1996) 13 Cal.4th 313, 339 ["In general, "'any promise made by an officer or person in authority, express or implied, of leniency or advantage to the accused, if it is a motivating cause of the confession, is sufficient to invalidate the confession and to make it involuntary and inadmissible as a matter of law.'""].) This argument borders on frivolous. J.V. made no statements whatsoever, either expressly or

8

impliedly, that Posada would receive leniency if he admitted to the abuse; indeed, she never mentioned criminal charges or criminal consequences at all, and Posada was not even aware law enforcement was involved in the telephone call. There is nothing in the record of the covert call indicating Posada was pressured to confess by suggestions or promises that Posada would be treated leniently in the criminal justice system. To the contrary, after inquiring whether J.V. was recording the call, Posada said he was not afraid of whoever was listening—or of going to jail—because he had found God and his sins had been forgiven. Posada spoke of his own free will.

Based on the totality of the circumstances, we conclude Posada's statements to J.V. during the covert call were voluntary and the trial court did not err in admitting them.

## DISPOSITION

The judgment is affirmed.

GOODING, J.

WE CONCUR:

O'LEARY, P. J.

SANCHEZ, J.

9