Filed 7/16/24  Ross v. County of Riverside CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER ROSS, Plaintiff and Appellant, v. COUNTY OF RIVERSIDE, Defendant and Respondent. | D082545 (Super. Ct. No. PSC1403729) |

APPEAL from a judgment of the Superior Court of Riverside County, Kira L. Klatchko, Judge.  Affirmed.

Eugene B. Stillman for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith; Tony M. Sain and Abigail J.R. McLaughlin, for Defendant and Respondent.

Christopher Ross sued his employer, the County of Riverside (the County) under the Fair Employment and Housing Act (FEHA) for disability discrimination and whistle blower protection under Labor Code sections 1102.5 and 1102.6.  A jury rejected his claims, and the trial court entered judgment in the County's favor.  The court subsequently denied Ross's motion for a new trial.  Ross appeals,

claiming the court erred by: (1) misinstructing the jury; (2) admitting improper character evidence; and (3) denying his new trial motion. We reject his contentions and affirm the judgment.

I.

FACTUAL AND PROCEDURAL BACKGROUND[1]

A.    *Background Facts*

"Ross worked for the County as a deputy district attorney. He was assigned to the homicide prosecution unit and was 'responsible for however many cases were assigned to [him] by [his] supervisor.' In addition to trying the cases, his duties included filing complaints and informations; conducting preliminary hearings; appearing at trial readiness conferences, settlement conferences, and motion hearings; and preparing for trial, including turning over discovery, interviewing witnesses, and conducting further investigation. Among the cases assigned to him were death penalty cases, which were considered the most difficult cases in the office.

"In July or August 2011, an assistant district attorney assigned him a case initially handled by another attorney. The attorney told the assistant district attorney she believed the defendant was innocent. Although the defendant had admitted committing the crime, the attorney believed the defendant's confession was coerced.

---

[1]    Some facts recited in this section are taken from this court's opinion in Ross's prior appeal, *Ross v. County of Riverside* (2019) 36 Cal.App.5th 580 (*Ross I*), reversing summary judgment on Ross's whistle blower and physical disability claims. (*Id.* at p. 583.) We take judicial notice of *Ross I*. (Evid. Code, §§ 452, subd. (d), 459.)

"In late November 2011, the attorney provided Ross with a memorandum in which she recommended dismissing the case because the defendant was innocent. She previously recommended dismissing the case more than a year earlier during a meeting about the case because she believed the case lacked inculpatory evidence. However, the district attorney and assistant district attorney took no action at the time." (*Ross, supra*, 36 Cal.App.5th at p. 584.)

Ross informed his supervisor and the assistant district attorney about the case, sent additional evidence for DNA testing, and recommended dismissing the case. Ross received two sets of DNA results exculpating the defendant and turned these over to defense counsel. When Ross informed his supervisor and the assistant district attorney about the DNA results, the assistant district attorney told him not to give the results to defense counsel and appeared upset when Ross stated he had already done so. After an investigator found more exculpatory evidence, the district attorney's office dismissed the case against the defendant in February 2014.

In May 2013, Ross learned he was exhibiting neurological symptoms that required evaluation and testing to determine whether he had a serious neurological condition. He informed his supervisor and his request for a transfer was postponed until such time as he found out he could not continue in his position. Over the next five months, Ross underwent medical testing and met with his superiors about changing his job assignment or duties to reduce his stress level. The County asked him to provide a physician's documentation to accommodate his requests, but he never provided the requested documentation from a health care provider regarding any restrictions

3

or limitations on his ability to perform his duties. Rather, he testified at deposition that his physicians did not suggest any restrictions on his activity at work or outside of work but had advised him to have his work do whatever was necessary to reduce his stress.

In February 2014, Ross served the County with a government claim, which the County denied. In March 2014, he filed a federal lawsuit against the County, which he later dismissed. In April 2014, the County asked Ross to provide documentation to allow it to evaluate his request for accommodation and invited him to participate in the interactive accommodation process. About a week later, Ross's counsel sent the County's lawyer a letter stating no reasonable person could work for the County under the conditions Ross endured and Ross deemed himself constructively terminated as of the date of the letter. The County sent Ross letters directing him to return to work or it would consider him to have abandoned his position. Ross informed the County he would not return to work and asked the County to pay him for any accrued vacation and sick leave. The County sent Ross a final notice of job abandonment indicating it considered him to have abandoned his job as of June 12, 2014.

B.    *The Jury Trial and New Trial Motion*

Ross sued the County for retaliation and disability discrimination. In September 2022, a jury heard Ross's claims that the County retaliated against him for repeatedly urging the district attorney's office to drop charges against a criminal defendant and discriminated against him by not providing reasonable accommodations based on Ross's actual or perceived disability of a traumatic brain injury. The County argued that Ross left his employment despite it

4

wanting him to stay.  The jury returned a verdict in favor of the County on all counts.  The court entered a judgment for the County and Ross filed a new trial motion, which the court denied.

## II.

## DISCUSSION

A.    *Ross's Misinstruction Claim Is Forfeited*

1.    <u>Additional Background</u>

The parties informed the court that each side submitted different versions of CACI No. 2540 regarding the elements of disability discrimination.  On November 3, 2022, the parties attended an unreported jury instruction conference via Zoom.  At the conference, the parties offered different versions of CACI No. 2540.  Ross requested that CACI No. 2540 be modified to include the following language (the disputed language):

> "In determining whether Mr. Ross's physical condition limited a 'major life activity,' you must consider the following: A physical condition limits a major life activity if it makes the achievement of the major life activity difficult.  Working is a major life activity.  Gov't Code §12926[, subd.] (m)(1)(B)(iii).  Repeated or extended absences from work for medical appointments constitute a limitation on the major life activity of working.  A physical condition that limits the major life activity of working may be temporary or short term and includes not only physical conditions that are actually disabling, but also physical conditions that are potentially disabling or perceived as disabling or potentially disabling."

The court's minutes show the parties met and conferred regarding the remaining disputed instructions and *stipulated* to the language of eight instructions, including "2540."  The version of CACI

5

No. 2540 given to the jury did not include the disputed language. Instead, under the items Ross needed to prove to show wrongful discrimination, item three provided: "3. That the County of Riverside knew or perceived that . . . Ross had a physical condition of temporary or permanent duration that limited the major life activity of working (i.e., a 'physical disability')." Item six provided: "6. That . . . Ross's physical disability was a substantial motivating reason for the County of Riverside's actual or constructive discharge of . . . Ross, or other adverse employment actions against him."

In declarations submitted with his new trial motion, Ross's trial attorneys claimed the version of CACI No. 2540 he requested included law of the case" language from *Ross, supra*, 36 Cal.App.5th 580.[2] Contrary to the court's minutes stating the parties stipulated to the

---

[2]     Specifically, in addressing whether summary judgment needed to be reversed on his claims for violations of the FEHA, the *Ross* court found a triable issue of material fact existed on the question of whether he was physically disabled within the meaning of the FEHA. The *Ross* court explained the law as: "A physical disability under the FEHA includes any physical impairment that affects the neurological or immunological systems and limits a major life activity. (Gov. Code, § 12926, subd. (m)(1).) A physical disability 'limits a major life activity if it makes the achievement of the major life activity difficult.' (Gov. Code, § 12926, subd. (m)(1)(B)(ii); Cal. Code Regs., tit. 2, § 11065, subd. (*l*)(3).) ' "[W]orking" is a major life activity, regardless of whether the actual or perceived working limitation implicates a particular employment or a class or broad range of employments.' (Gov. Code, § 12926.1, subd. (c); see Gov. Code, § 12926, subd. (m)(1)(B)(iii); Cal. Code Regs., tit. 2, § 11065, subd. (*l*)(1), (3)(D).) Repeated or extended absences from work for medical appointments constitute a limitation on the major life activity of working. (*Soria v. Univision Radio Los Angeles, Inc.* (2016) 5 Cal.App.5th 570, 588–589, [210 Cal.Rptr.3d 59].)" (*Ross, supra*, 36 Cal.App.5th at p. 594.)

disputed instruction, in a declaration filed with Ross's new trial motion, Ross's counsel represented the trial court agreed with the County that the disputed language should not be given to the jury.

2.    Analysis

Ross argues the court prejudicially erred when it denied his request that the disputed language derived from *Ross, supra*, 36 Cal.App.5th 580 be included in CACI No. 2450.  He contends the instruction given by the court improperly required the jury to find he had an "actual physical disability."  He claims the improper instruction precluded the jury from finding, in the alternative, whether he had an actual or perceived physical or mental disorder, disability, or condition. He maintains the error prejudiced him because a reasonable chance existed that the jury would have rendered a verdict in his favor absent the error.

Ross forfeited this claim of error because the court's minutes show his trial counsel *stipulated* to the version of CACI No. 2450 given to the jury.  (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403 [" '[w]here a party by his conduct induces the commission of error, he is estopped from asserting it as a ground for reversal' on appeal"]; *People v. Gallego* (1990) 52 Cal.3d 115, 195 [appellate challenge to stipulated jury instructions forfeited].)

Without citation to authority, Ross claims a trial court's alleged erroneous rejection of a proposed jury instruction constitutes an "irregularity in the proceedings" under Code of Civil Procedure section 657(1) which can be supported by affidavits under Code of Civil

7

Procedure section 658.[3] " '[I]rregularity in the proceedings' is a catchall phrase referring to any act that (1) violates the right of a party to a fair trial and (2) which a party 'cannot fully present by exceptions taken during the progress of the trial, and which must therefore appear by affidavits.' " (*Montoya v. Barragan* (2013) 220 Cal.App.4th 1215, 1229–1230.)

The issue Ross raises, the alleged erroneous rejection of a proposed jury instruction, does not qualify as an "irregularity in the proceedings" to be presented by affidavit. Rather, this is the type of error that could have been called to the attention of the trial court when the purported irregularity occurred. Although the parties' discussion with the court regarding the jury instructions was not reported, counsel could have preserved his objection to the instruction by asking to place it on the record outside the presence of the jury. There is no indication in the record showing counsel asked to place the matter on the record or that the court refused such a request. The declarations of Ross's trial attorneys submitted with his new trial motion create a problematic record because it comes from trial counsel's recollection of a conversation and ruling that occurred off the record. Moreover, counsel's recollection conflicts with the trial court's minute order. The declarations are essentially an improper ex parte settled

---

[3]    Code of Civil Procedure section 658 provides that when an application for a new trial is made under section 657(1), (2), (3), or (4), it must be made on affidavits; otherwise it must be made on the minutes of the court.

8

statement.  (Cal. Rules of Court, rule 8.837 [setting forth the procedure for statements on appeal].)[4]

Ross also claims the special verdict form given to the jury contained improper wording regarding a "physical disability."  He provided no citation to the record showing where he raised this objection to the trial court.  To the extent Ross believed the special verdict form was inaccurate, ambiguous, or misleading, he had a duty to object before the form was submitted to the jury, thereby giving the trial court an opportunity to address his concerns.  Accordingly, any challenges to the special verdict form are forfeited.  (*Jensen v. BMW of North America, Inc.* (1995) 35 Cal.App.4th 112, 131 [party "waived any objection to the special verdict form by failing to object before the court discharged the jury"].)

Assuming Ross preserved the alleged instructional error, he contends the court's failure to instruct the jury with his requested version of CACI No. 2540 constituted prejudicial error because the improperly worded version of CACI No. 2540 given to the jury used only the term "physical disability," with no definition.  He claims the instruction precluded the jury from properly applying the law to the evidence and determining whether he had an actual or perceived mental condition, disease, or disorder.  He contends the instruction

---

4      The failure of Ross's appellate counsel to acknowledge and address the court's minute order showing the parties stipulated to the version of  CACI No. 2450 given to the jury does or may violate the California Rules of Professional Conduct.  (See, e.g., Rules Prof. Conduct, rule 3.3(a)(1).)  Counsel is admonished that such conduct can carry serious consequences.

incorrectly required the jury to find he had an actual physical disability.

As a preliminary matter, the "mere fact that language in a proposed jury instruction comes from case authority does not qualify it as a proper instruction." (*Morales v. 22nd Dist. Agricultural Assn.* (2016) 1 Cal.App.5th 504, 526.)  It is dangerous to frame jury instructions "upon isolated extracts from the opinions of the court" because "judicial opinions are not written as jury instructions, are notoriously unreliable as such, and may have a confusing effect upon a jury." (*Ibid.*; see Cal. Rules of Ct., Rule 2.1050, subd. (f) [recommending judges use Judicial Council instructions unless a different instruction "would more accurately state the law and be understood by jurors"].)

"A judgment may not be reversed on appeal, even for error involving 'misdirection of the jury,' unless 'after an examination of the entire cause, including the evidence,' it appears the error caused a 'miscarriage of justice.'  (Cal. Const., art. VI, § 13.)" (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 574.)  "Instructional error in a civil case is prejudicial 'where it seems probable' that the error 'prejudicially affected the verdict.' " (*Id.* at p. 580.)  "Actual prejudice must be assessed in the context of the individual trial record." (*Ibid.*)  "[W]hen deciding whether an error of instructional omission was prejudicial, the court must also evaluate (1) the state of the evidence, (2) the effect of other instructions, (3) the effect of counsel's arguments, and (4) any indications by the jury itself that it was misled." (*Id.* at pp. 580–581.)

First, contrary to Ross's argument, the version of CACI No. 2450 given to the jury defined a "physical disability" as "a physical condition

of temporary or permanent duration that limited the major life activity of working." This definition encompassed the concepts in the disputed language that working is a major life activity and that the physical condition could be temporary. (See fn. 2, *ante,* at p. 10.) He also contends the instruction incorrectly required the jury to find he had an actual physical disability. We disagree because the instruction allowed him to show the County "knew or perceived" he suffered from a physical disability. This definition encompassed the concept in the disputed language that a physical condition need only be perceived as disabling. (*Ibid.*)

The instruction did not include the concept from the disputed language that "[r]epeated or extended absences from work for medical appointments constitute a limitation on the major life activity of working." (See fn. 2, *ante*, at p. 2.) However, Ross did not cite where in the record there is evidence that his work absences for medical appointments limited his ability to work. Rather, he testified the County "had to give you" time off for medical exams.

Even assuming Ross preserved his objection, he has not met his burden of showing how the court's purported rejection of the disputed language prejudiced him.

B.    *The Court Did Not Commit Evidentiary Error*

1.    Additional Background

In 2012, while working as a district attorney for the County, Ross prosecuted the defendant in *People v. Esswein*, case No. INF062819. After a jury found defendant guilty of first degree murder, the trial court partially granted defendant's motion for a new trial based on prosecutorial misconduct. After the trial court's ruling, Ross self-

11

reported to the California State Bar and District of Columbia Bar. In 2013, the California State Bar closed its file without prejudice. The People appealed the order on the basis the trial court abused its discretion in finding Ross committed misconduct. In 2016, the California State Bar concluded its second investigation and closed the matter without prejudice after determining it did not warrant further action.

Ross moved in limine to exclude any reference to the *Esswein* prosecutorial misconduct arguing, among other things, that this evidence was inadmissible character evidence. A minute order shows the court denied the motion. At trial, the County raised the *Esswein* prosecutorial misconduct during opening statement without objection. The County argued that it fought against the finding that Ross had committed prosecutorial misconduct "all the way" to the appellate court who agreed that Ross had committed prosecutorial misconduct. After a witness mentioned the *Esswein* prosecutorial misconduct, Ross's counsel raised the investigations conducted by the California State Bar and the District of Columbia Bar and represented that the California State Bar found Ross "not guilty."

When another witness mentioned the *Esswein* prosecutorial misconduct, Ross's counsel objected that "[i]t violates the in limine which was supposed to just go to demonstrate how much the office was supporting Mr. Ross. The court overruled the objection, stating the "comment is superfluous and the jury will disregard . . . ." After Ross's counsel asked a third witness from the County's district attorney's office about the *Esswein* case, the witness testified that after the defendant's conviction was reversed based on Ross's prosecutorial

12

misconduct, the defendant pled guilty to second degree murder. Ross's counsel objected when defense counsel moved to place the unpublished *Esswein* opinion into evidence, the court "reserve[d]" on the issue. A fourth witness also mentioned the *Esswein* prosecutorial misconduct without objection.

In moving for a new trial, Ross argued the denial of his in limine motion to exclude the *Esswein* prosecutorial misconduct constituted an irregularity in the proceeding. In a declaration accompanying the new trial motion, Ross's trial counsel stated the court improperly permitted defense counsel to present false evidence to the jury that Ross had committed unethical prosecutorial misconduct in *Esswein* and the court erred when it denied him the ability to rebut the "false accusations" of misconduct with the documents from the California State Bar and the District of Columbia Bar which concluded Ross "had not committed prosecutorial misconduct, or unethical behavior" in *Esswein*.

The trial court denied Ross's new trial motion. Regarding the *Esswein* case, the court stated:

> "Plaintiff argues that the Court should not have excluded evidence that the California State Bar and District of Columbia Bar did not find Plaintiff committed misconduct in connection with the Esswein trial in 2012. Although the motion is vague and does not explain how this ruling would materially affect Plaintiff's right to a fair trial or his substantial rights, the Court addresses this issue because it rejects the premise of this argument.

> "To the extent the Court understands this issue it pertains to Plaintiff's motion in limine 1, to exclude all references to alleged prosecutorial misconduct in the *Esswein* case, which was documented in an appellate opinion, and reports to the California and

13

D.C. Bars. The Court denied the motion with respect to the *Esswein* case, but inquired of Plaintiff's counsel as to whether it should be granted as to the very complaints at issue in the motion at bench, the state bar reports. At that time Plaintiff's counsel affirmatively stated that if the *Esswein* misconduct was not going to be excluded then Plaintiff did not want the Court to partially grant the motion and exclude the California and D.C. Bar materials. Plaintiff's counsel affirmatively stated that they did not want the Court to exclude these materials because they wanted to be able to show that Plaintiff self-reported to these regulatory bodies and was not found to have committed misconduct in connection with the *Esswein* case."

2.   Analysis

As a threshold matter, the erroneous admission of evidence does not qualify as an "irregularity in the proceedings" to be presented by affidavit. This is the type of error that must be called to the attention of the trial court when the evidence is admitted. (Evid. Code, § 353.) A motion in limine to exclude evidence is sufficient to preserve an objection if the motion (1) is directed to a particular, identifiable body of evidence; (2) states a specific legal ground for exclusion that is subsequently raised on appeal; and (3) is made at a time before or during trial when the trial court can determine the evidentiary issue in its appropriate context. (*People v. Morris* (1991) 53 Cal.3d 152, 190 , disapproved on another ground in *People v. Stansbury* (1995) 9 Cal.4th 824, 830, fn. 1.) If each of these conditions is satisfied, counsel would be "justified in concluding that a mere repetition of the same objection advanced on the motion *in limine* would serve no useful purpose." (*Morris*, at p. 189.) For purposes of analysis, we deem these three conditions satisfied and review the issue on its merits.

14

Ross argues the court improperly allowed the County to admit a false accusation of prosecutorial misconduct into evidence and this evidence was used solely to attack his character and not his ability to perform his job. Ross sought to exclude this evidence arguing it was irrelevant, unduly prejudicial, and constituted character evidence inadmissible to attack his credibility. The court denied the motion via a minute order.[5] We address Ross's three objections for exclusion of this evidence to ascertain whether the trial court erred.

On appeal, a trial court's decision to admit or exclude evidence is reviewed solely for abuse of discretion. (*Austin B. v. Escondido Union School Dist.* (2007) 149 Cal.App.4th 860, 885.) We will not disturb the court's ruling unless there is a showing it "exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a miscarriage of justice." (*People v. Avitia* (2005) 127 Cal.App.4th 185, 193.) Only relevant evidence is admissible at trial. (Evid. Code, § 350.) Evidence Code section 210 defines relevant evidence as evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." In other words, "[r]elevance is a low bar." (*People v. Villa* (2020) 55 Cal.App.5th 1042, 1052.) Under Evidence Code section 352, a trial court has "broad discretion . . . to exclude even relevant evidence if it determines the probative value of the evidence is substantially outweighed by its possible prejudicial effects." (*People v. Merriman* (2014) 60 Cal.4th 1, 74.)

Reviewing Ross's objections, the isolated *Esswein* prosecutorial misconduct evidence does not qualify as character evidence. "Although

5      This hearing was unreported.

15

the term 'character' is not defined in the Evidence Code, it is generally described as 'the aggregate of a person's traits' and means 'disposition' (i.e., the tendency to act in a certain manner under given circumstances)." (*People v. Shoemaker* (1982) 135 Cal.App.3d 442, 446, fn. 2.) Nothing in the record suggests Ross had a disposition to commit or regularly committed prosecutorial misconduct. Rather, a member of the district attorney's office familiar with the performance appraisal process and Ross's former supervisor reviewed Ross's performance evaluations and found nothing critical of Ross's performance. Ross's evaluations were all positive, with the witness describing Ross as a "superstar." Ross's last evaluation did not mention the *Esswein* case because his former supervisor concluded it did not rise to the level of being put into the performance evaluation. An attorney at the Riverside district attorney's office who handles most prosecutorial misconduct cases testified that her unit investigated the trial court's prosecutorial misconduct finding in *Esswein* and concluded that Ross "did not commit prosecutorial misconduct under any applicable legal standard." She believed Ross "may have committed inadvertent errors that did not rise to the level of prosecutorial misconduct, based on [her] prosecutor's analysis of the case. They make errors. But he did not make any malicious misconduct. He didn't do anything malicious or dishonest." Accordingly, the trial court did not err by overruling Ross's objection that the *Esswein* prosecutorial misconduct evidence should have been excluded as improper character evidence.

The County contends the evidence that Ross engaged in prosecutorial misconduct is not irrelevant because it has some tendency

in reason to support its defense that Ross was terminated for cause, rather than for impermissible discriminatory reasons. We agree.

As an affirmative defense to Ross's whistleblower claim, the court instructed the jury that if Ross proved an actual or constructive discharge, the County would not be liable if it proved "by clear and convincing evidence that it would have discharged . . . Ross anyway at that time for legitimate, independent reasons." Because the *Esswein* prosecutorial misconduct evidence had relevance to this defense, the trial court properly admitted it.

Relevant evidence must be excluded "when its probative value is *substantially* outweighed by its prejudicial effect." (*People v. Tran* (2011) 51 Cal.4th 1040, 1047; Evid. Code, § 352.) This is an exercise of discretion we review under "the deferential abuse of discretion standard" (*People v. Kipp* (2001) 26 Cal.4th 1100, 1121), and we will not disturb the trial court's decision unless it was arbitrary, capricious, or patently absurd and resulted in a miscarriage of justice. (*People v. Jones* (1998) 17 Cal.4th 279, 304.) The prejudice that Evidence Code section 352 aims to prevent is not the bias or harm to a defense caused by relevant and highly probative evidence. (*People v. Jones* (2017) 3 Cal.5th 583, 610.) All evidence supporting guilt is inherently prejudicial or harmful to the defendant's case. (*Ibid.*) The greater the strength of the evidence, the more prejudicial it is considered. (*Ibid.*) The "prejudice" mentioned in Evidence Code section 352 pertains to evidence that specifically tends to elicit an emotional bias against the defendant as a person and has minimal relevance to the issues at hand. (*Jones*, at p. 610.)

We find no error in admitting the *Esswein* prosecutorial misconduct evidence because it was relevant to the County's whistleblower defense and not likely to invoke a purely emotional bias against Ross. The evidence was neutral, not particularly inflammatory, and did not consume a substantial amount of time. On this record, we cannot say the court acted arbitrarily or exceeded the bounds of reason in impliedly finding that the probative value of the *Esswein* prosecutorial misconduct evidence outweighed its prejudicial potential.

Even assuming the evidence had no relevance, it is Ross's burden on appeal to show not only that the court erred but also explain how admission of the evidence prejudiced him. (Cal. Const., art. VI, § 13 [no reversal of judgment for erroneous admission of evidence without a showing of a miscarriage of justice]; Evid. Code, § 353 [same]; *Winfred D. v. Michelin North America, Inc.* (2008) 165 Cal.App.4th 1011, 1038 [burden of showing prejudice is on the appellant challenging an evidentiary ruling].) Ross has not shown how this assumed error resulted in a miscarriage of justice.

As noted above, the *Esswein* prosecutorial misconduct evidence is not "false" as characterized by Ross. Ross's argument in his reply brief that the County used the *Esswein* prosecutorial misconduct evidence to argue he was an "an unethical, dishonest liar" is not supported by the record. Review of the reporter's transcript citations provided by Ross do not show any witness used the *Esswein* prosecutorial misconduct evidence to state Ross was dishonest or unethical. Instead, Ross's former supervisor testified no defense lawyer who went up against Ross in court represented Ross was unethical or dishonest. Our review of the record does not compel us to conclude the outcome of the trial would

have been different had this evidence been excluded. Thus, even assuming error, Ross failed to carry his burden on appeal to show that the purported evidentiary error was prejudicial, requiring reversal of the judgment.

Ross next argues the trial court prevented him from rebutting the accusation of prosecutorial misconduct with documents from the California State Bar and the District of Columbia Bar, when it had previously ordered such documents were admissible. Ross failed to cite where in the record the court denied his request to admit the documents from the California State Bar and the District of Columbia Bar or sustained an objection to these documents. Instead, the court's ruling on Ross's new trial motion shows it allowed the County to present these documents as a defense to the *Esswein* prosecutorial misconduct evidence. Moreover, while questioning a witness, Ross's trial counsel referred to these documents without objection. We conclude Ross forfeited this purported error. (*In re Marriage of Zimmerman* (2010) 183 Cal.App.4th 900, 912 [we ordinarily do not consider claims made for the first time on appeal which could have been but were not presented to the trial court].)

To the extent we can address the merits, Ross has not shown how the purported exclusion of these documents was prejudicial. These documents do not rebut the *Esswein* court's conclusion that Ross committed prosecutorial misconduct in California. The California State Bar closed the matter without prejudice and did not determine whether Ross had committed prosecutorial misconduct. The District of Columbia Bar concluded no clear and convincing evidence existed showing Ross violated the District of Columbia Rules of Professional

Conduct and dismissed the matter. The District of Columbia Bar did not address whether Ross had committed prosecutorial misconduct under the California State Bar Rules of Professional Conduct.

C. *The Court Did Not Err by Denying Ross's New Trial Motion*

    1.    <u>Additional Background</u>

The jury rendered its verdict on November 14, 2022. As relevant here, Ross argued in his new trial motion that newly discovered evidence created grounds for a new trial. He claimed that on November 20, 2022, a few days after the jury rendered its verdict, he received an Official U.S. Department of Veterans Affairs (the VA) document dated November 15, 2022 (the VA Rating) stating the VA had determined he qualified for VA benefits for the following injuries, that were determined to have occurred during his U.S. Army service (from 1991-2001), traumatic brain injury (TBI) with vertigo, headaches, post-concussion syndrome, and tinnitus.

The County opposed the motion arguing, among other things, that Ross manufactured the "new" evidence because his case had been pending for almost a decade, but he did not submit his request to the VA for a disability finding until August 2022—a month before trial commenced. The County also argued that the injuries noted in the VA Rating existed prior to the time it employed Ross.

The court denied the new trial motion. As relevant here, it concluded the document at issue was not "newly discovered." It noted the VA Rating at issue became effective on July 21, 2022, and Ross "[did] not explain why this document could not have been discovered before trial, or why it could not have been mailed to him sooner." It also concluded the evidence would not have produced a different result

had it been provided to the jury because it had instructed the jury that a "perceived physical condition, not just actual physical condition, may be used to find that [Ross] had a disability."

2.    Analysis

The authority of the trial court to grant a new trial "is established and circumscribed by statute." (*Oakland Raiders v. National Football League* (2007) 41 Cal.4th 624, 633; *In re Marriage of Herr* (2009) 174 Cal.App.4th 1463, 1465 [a trial court "has no inherent authority to order a new trial"].)  Code of Civil Procedure section 657 sets forth seven grounds for such a motion, including "[n]ewly discovered evidence, material for the party making the application, which he could not, with reasonable diligence, have discovered and produced at trial." (Code Civ. Proc., 657(4).)  The key elements that must be established are: (1) "the evidence is newly discovered; (2) . . . reasonable diligence has been exercised in its discovery and production; and (3) . . . the evidence is material to the movant's case." (*Sherman v. Kinetic Concepts, Inc.* (1998) 67 Cal.App.4th 1152, 1161 (*Sherman*).)

New evidence is "material" if it is of a type likely to bring about a different result.  (*Sherman*, *supra*, 67 Cal.App.4th at p. 1161.)  "The claim of newly discovered evidence as ground for a new trial is universally regarded with distrust and disfavor for obvious good reasons.  A sound public policy requires every litigant to exhaust all diligence and reasonable efforts to produce at the trial of his cause all existing evidence in his behalf. . . . Before such evidence will receive consideration from the reviewing court it must be of such character as would make it reasonably certain that upon a new trial a different judgment would result." (*Bliss v. Security-First Nat. Bank of*

21

*Los Angeles* (1947) 81 Cal.App.2d 50, 59–60.) "A trial court's broad discretion in ruling on a motion for new trial is accorded great deference on appeal. [Citation.] However, particularly when reviewing an order denying a new trial, the appellate court is required to review the entire record to determine independently whether the error on which the new trial motion is based is prejudicial." (*Plancarte v. Guardsmark* (2004) 118 Cal.App.4th 640, 645.)

Ross contends the trial court improperly denied his new trial motion based on newly discovered evidence material to the critical issue of whether he had a physical disability under FEHA. He asserts the "new" evidence proves he had a TBI during his employment with the County and a TBI is a physical disability under the FEHA. He argues the evidence is conclusive rebuttal evidence to the County's argument that he lied about having a TBI or post-concussion syndrome.

We conclude the court did not abuse its discretion in denying Ross's new trial motion based on newly discovered evidence. First, Ross did not exercise reasonable diligence to discover and produce the evidence. (*Sherman*, *supra*, 67 Cal.App.4th at p. 1161.) In his declaration in support of the motion, Ross stated "[d]espite reasonable efforts to procure a VA disability claim decision prior to trial, this newly discovered evidence could not have been discovered by me, or anyone else, through any due diligence prior to this case's trial because the official government document was not mailed to me (in San Antonio, Texas) until the jury was deliberating." While it is true Ross did not *receive* the decision in time to present it at trial, he failed to explain why he waited until August 9, 2022, a little over a month before trial, to *submit* his request to the VA for a disability finding.

Ross filed his complaint in July 2014, but trial did not start until September 26, 2022.  Ross has not explained why he could not have requested a VA disability finding and obtained a VA disability rating in the over eight years this matter was pending.

Additionally, Ross has not shown how the court abused its discretion when it concluded the "new" evidence was not material to his case.  Ross claims the VA disability finding conclusively proves he had a physical, mental, or medical condition and had this evidence been admitted it is reasonably likely he would have prevailed on his FEHA claims "which the jury denied because they found that [he] did not have a 'physical disability.' "  We disagree.

To find the County "wrongfully discriminated against [Ross] based on a physical condition that limits a major life activity (a disability)" the court instructed jurors that Ross needed to prove, among other things, that "the [County] knew or perceived that . . . Ross had a physical condition of temporary or permanent duration that limited the major life activity of working (i.e., a 'physical disability')." In turn, jurors were asked whether Ross had "a physical disability that limited his ability to work."  Thus, the question was not only whether Ross had a physical disability but whether that physical disability also limited his ability to work.[6]  Ross consistently testified that his physical condition did not limit his ability to work.

The VA rating informed Ross he was entitled to VA benefits based on his service connected TBI with vertigo, headaches, post-

---

[6]     The version of CACI No. 2540 that Ross requested similarly required that he have "a physical condition that limited the major life activity of working."

concussion syndrome, and tinnitus.  Accordingly, Ross suffered from these physical conditions before and during his employment with the County.  Moreover, Ross told the jury about some of his service related physical conditions.  Ross testified that while in the military his exposure to explosives caused hearing loss and "constant tinnitus" which he has had since his time in the military but that this did not interfere with his work or cause him to miss work.  He also sustained permanent injuries to his hip and shins and suffered from these injuries when he left the military in 2001.  Ross missed no work due to either of these conditions and received no treatment for them.

Although the County expressed concern in a letter dated November 18, 2013, that Ross experienced problems impacting his job, Ross claimed nothing impacted his ability to work "at any point in time" and he simply "needed time to go get evaluated to rule out potentially life threatening diseases or disorders.  I was always able to perform my job, and I did."  Ross went to the Mayo Clinic for evaluation.  No doctor from the Mayo Clinic told Ross he had any condition that prevented him from doing his job as a homicide prosecutor.  Instead, he was advised to reduce his stress level.  During the time he visited the Mayo Clinic to rule out a variety of possible disorders, Ross testified he "was capable to do [his] job the entire way through" but needed to reduce his stress "until we rule out these life threatening disorders. . . ."

Even if the jury had been informed Ross was entitled to VA benefits based on his service connected TBI with vertigo, headaches, post-concussion syndrome, and tinnitus, the evidence adduced at trial showed these physical conditions did not limit his ability to work.  The

trial court did not err in concluding the new material was not likely to bring about a different result (*Sherman, supra,* 67 Cal.App.4th at p. 1161), and thus did not abuse its discretion denying Ross's new trial motion based on newly discovered evidence.

DISPOSITION

The judgment is affirmed.  Respondent is entitled to costs on appeal.

IRION, J.

WE CONCUR:


O'ROURKE, Acting P. J.


DATO, J.

25